**Frederick M. GORENFLO,
Plaintiff-Appellant,**

v.

**TEXACO, INC., et al.,
Defendants-Appellees.**

No. 83–3485
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 6, 1984.

Rehearing Denied Aug. 21, 1984.

Ernest R. Eldred, Baton Rouge, La., for plaintiff-appellant.

G. William Jarman, Baton Rouge, La., for Texaco, Inc.

David G. Radlauer, Herschel L. Abbott, Jr., New Orleans, La., for Amarex, Inc.

W. Shelby McKenzie, J. Clayton Johnson, Baton Rouge, La., for Ennex, Ltd.

Before GEE, POLITZ and JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

The trial court found certain mineral leases valid and enforceable. Finding no error, we affirm.

## Facts

On May 14, 1975, Fredrick M. Gorenflo and his co-owners in indivision, granted an oil, gas, and mineral lease to Texaco, Inc., covering a 76.2 acre tract in East Baton Rouge Parish, Louisiana. The lease had a primary term of five years during which Texaco subleased a portion of the tract to Ennex, Ltd. which in turn subleased to Ennex, Ltd. II and Amarex, Inc.

Ennex concluded that under the terms of the Gorenflo lease, as well as under the terms of the leases covering surrounding tracts of land, the lessee was empowered to create a unit out of leased properties. Once a unit was declared, the drilling of a well anywhere within the unit extended the life of all leases on all property within the unit.

Ennex secured a drilling permit and declared a 160-acre unit around the selected well site. The unit included appellant's property and that of several other lessors whose leases were about to expire. Extensive site preparation was undertaken before the unit was declared. Between May 9 and 14, 1980, a portion of the drilling rig was moved onto the site and drill pipe inspections were conducted. The well was spudded in on May 21, 1980. Production, which was later obtained, continues.

On May 20, 1980, the owners of the Gorenflo property partitioned the property. In this voluntary partition appellant acquired full ownership of a tract containing 7.267 acres. Appellant then brought the instant action to set aside the lease.

The issue posited was whether the operations conducted in the unit by the appellees prior to May 14, 1980 (the last day of the primary term) were sufficient to continue the lease in full force and effect. The trial court struck appellant's motion for trial by jury, and after a bench trial, answered the question in the affirmative and found for appellees.

## Analysis

Gorenflo assigns four errors on appeal, discussed in the order presented.

### A. Validity of Leases

Appellant's first contention is that appellees failed to introduce evidence establishing that all of the leases covering the tracts pooled in the unit were in effect when the unit was formed. Significantly, appellant offered no evidence, nor did he suggest that the leases were not valid. He merely asserts that appellees failed to prove the validity of the leases. This question was not presented to the trial court but is first raised on appeal. It is now well settled that "matters raised for the first time on appeal will not be considered." *Wiley v. Offshore Painting Contractors, Inc.*, 711 F.2d 602 (5th Cir.1983), *quoting*

*Shingleton v. Armor Velvet Corp.*, 621 F.2d 180, 183 (5th Cir.1980).

## B. The Gervasi Lease

Appellant next contends that the Gervasi lease, one of those pooled, is invalid, an invalidity which voids the entire pooled unit. Appellant contends that the Gervasi lease was executed without proper court authority and that the judgment of homologation authorizing execution of the lease was not properly recorded.

 Patricia Hayes Davis Gervasi, as tutrix of her two minor children, Laura Le-Jeune Davis and William Rufus Davis, III, signed a mineral lease on the children's behalf with Exxon on October 7, 1977. Mrs. Gervasi was appointed tutrix and authorized to sign the lease on behalf of her children by court order dated October 17, 1977. The judgment of homologation specifically referred to the Exxon lease. The court authorized Mrs. Gervasi to execute the lease. After receiving court approval, Mrs. Gervasi delivered the lease to Exxon and was given the payment due the lessors. Appellant argues that by signing the lease before receiving the requisite court approval Mrs. Gervasi impermissibly executed the lease. This argument misreads Louisiana law. The signing alone did not constitute execution. *Southern Enterprises, Inc. v. Foster*, 12 So.2d 842 (La.App.1942), *aff'd.*, 203 La. 133, 13 So.2d 491 (La.1943). *Accord, Gulf South Minerals, Inc. v. Tatco, Inc.*, 434 So.2d 545 (La.App.1983). The lease was not executed until all of the required formal acts were accomplished. The trial court correctly found that "acting with court approval, the Gervasi Lease was properly executed and delivered to Exxon." *Gorenflo v. Texaco*, 566 F.Supp. 722 at 715 (D.La.1983).

 Appellant further contends that the Gervasi Lease is invalid because the judgment authorizing execution of the lease was not recorded. The Louisiana public records doctrine, set forth in La.R.S. 9:2721 and 9:2722, provides:

§ 2721. Filing in office of parish recorder

No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable property is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.

§ 2722. Persons protected

Third persons or third parties so protected by and entitled to rely upon the registry laws of Louisiana now in force and effect and as set forth in this Chapter are hereby redefined to be and to include any third person or third party dealing with any such immovable or immovable property or acquiring a real or personal right therein as purchaser, mortgagee, grantee or vendee of servitude or royalty rights, or as lessee in any surface lease or leases or as lessee in any oil, gas or mineral lease and all other third persons or third parties acquiring any real or personal right, privilege or permit relating to or affecting immovable property.

It is clear that the public records doctrine is intended to protect those who rely upon the public records in "acquiring any real or personal right, privilege, or permit relating to or affecting immovable property." It cannot seriously be argued under the facts of this case that the appellant relied upon the absence in the conveyance records of the Gervasi judgment of homologation in the tutorship in acquiring his property or in "dealing with" the lease. *See, Wells v. Joseph*, 234 La. 780, 101 So.2d 667 (1958). The mineral lease was recorded and it gave adequate notice to third parties that an examination of the judicial records was in order. There is no merit to this assignment of error.

## C. Validity of the Pooling Clause

The pooling clause of appellant's lease authorized appellees to declare a unit for

the purpose of drilling an exploratory well. Paragraph seven states:

Lessee is hereby granted the optional right, at any time, and from time to time, either before or after production is obtained, to form or to reform a unit or units covering the leased premises or any portion or portions thereof, as to all strata or any stratum or strata for the production primarily of oil or primarily of gas with or without distillate, when, in Lessee's judgment, it is necessary or advisable to do so in order to properly develop and operate said premises so as to promote the conservation of oil, gas, or other minerals in and under and that may be produced from said premises, to prevent waste, to avoid the drilling of unnecessary wells, or to comply with the spacing or unitization orders of any regulatory body of the state or the United States having jurisdiction.

The lease grants the lessee the right to declare a unit when, in its judgment, creation of a unit is advisable and necessary to develop and operate the property properly to promote conservation, prevent waste, avoid the drilling of unnecessary wells, or to comply with spacing or unitization orders. The appellant contends that the unit must be for "production" and that exploration alone is not production. We are not persuaded.

■ Articles 1946 and 1947 of the Louisiana Civil Code direct interpretation of the words "develop and operate" consistent with their received meaning within the oil and gas industry. The word "develop," as used in the industry, clearly contemplates exploration. *Waseco Chemical Supply Co. v. Bayou State Oil Corp.*, 371 So.2d 305 (La.App.1979). Exploratory work is also contemplated by the term "operations." *Bouterie v. Kleinpeter*, 258 La. 605, 247 So.2d 548 (1971).

■ Furthermore, Gorenflo errs when he asserts that production prior to the formation of the unit is required. The terms of the lease are explicit:

Lessee is hereby granted the optional right, at any time, and from time to time, *either before or after production is obtained*, to form or reform a unit or units covering the leased premises or any portion or portions thereof ..., (emphasis added).

The trial court correctly concluded that the appellees actions conformed to the requirements of the pooling clause.

D. Right to Jury Trial

■ Appellant's final assertion is that the trial court improperly dismissed his jury demand. A suit for a cancellation of a mineral lease in Louisiana arises in equity, and there is no right to have the issue tried to a jury. *Nunez v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir.1978). Although in his complaint the appellant alluded to possible damages, he specifically declared that he was "presently unable to aver that such damage has in fact occurred." Absent a claim for damages, appellant's action sounds solely in equity. He has no right to a trial by jury. *Id.*

The judgment of the district court is AFFIRMED.