Nan R. NEEL, Wilma Ellen Robers, Louise Roberts Dobbins, Genevieve Roberts, Dorothy Roberts Moore, Thomas M. Roberts, John T. Roberts and Dollie L. Roberts, Individually and as Executrix of the Estate of William M. Roberts

v.

**ALPAR RESOURCES, INC.**

No. 07–89–0027–CV.

Court of Appeals of Texas, Amarillo.

Sept. 28, 1990.

Robertson & Miller, William D. Burk, Dallas, for appellants.

Culton Morgan Britain & White, Maston C. Courtney, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

DODSON, Justice.

Nan R. Neel, Wilma Ellen Roberts, Louise Roberts Dobbins, Genevieve Roberts, Dorothy Roberts Moore, Thomas M. Roberts, John T. Roberts and Dollie L. Roberts, individually and as executrix of the estate of William M. Roberts, appellants, appeal from a take nothing judgment rendered on their cause of action against Alpar Resources, Inc. The controlling question for determination in this appeal is whether the reservation in a warranty deed dated 13 May 1938 from the Federal Land Bank of Houston (FLB) to C.A. Wilhelm is a mineral interest or a royalty interest.

The trial court determined that the reservation was a 1/16 non-participating royalty interest. Affirmed.

By the warranty deed, FLB conveyed to C.A. Wilhelm all of Section 44, Block A–2, H & GN Ry. Co. Survey, Hemphill County, Texas containing 640 acres more or less,

SAVE AND EXCEPT an *undivided one-sixteenth (1/16th) interest (same being one half (1/2) of the usual (1/8) royalty)* in and to all of the oil, gas and other minerals, in, to and under and that may be produced from the land herein conveyed to be paid or delivered unto said Bank as its own property free of cost to it from royalty oil, gas and/or other minerals FOREVER, together with the right of ingress and egress, at all times for the purpose of storing, treating, marketing and removing the same therefrom. *Said interest in and to said minerals hereby reserved is a non-participating royalty interest and shall not participate in the bonus paid for any oil, gas or other mineral lease covering said land, nor shall it participate in the money rentals* which may be paid to extend the time within which a well may be begun under the terms of any lease covering said land. *In the event oil, gas and/or other minerals are produced from said land, then said Bank shall receive a full one-sixteenth (1/16th) portion thereof as its own property, to be paid or delivered to said Bank* free *of* cost to it. (Emphasis added).

The appellants claim the reserved interest to FLB is an undivided 1/16 mineral interest rather than an undivided 1/16 royalty interest (i.e., 1/2 of the usual 1/8 royalty). It is undisputed in this action that third parties (the Youngs) who are not parties to this action, own an undivided 1/2 mineral interest in and to the property in question. Thus, the appellants claim they own the remaining 7/16 mineral interest, and as owners of that 7/16 mineral interest they are entitled to receive 7/16 of the usual 1/8 royalty interest provided for in the lease on the property. They further claim that FLB's 1/16 mineral interest entitles the Bank to only 1/16 of the usual

1/8 royalty provided for in the leases on the property. Among other things, Alpar, Inc. claims the above reservation is a 1/16 non-participating royalty interest which entitled FLB to 1/2 of the 1/8 royalty as stated in the reservation.

FLB is the stipulated common source of title to the property in question. Nan R. Shaw succeeded to all the right, title and interest of C.A. Wilhelm under the above described deed. By a deed dated 15 September 1964, Nan R. Shaw, joined by her husband O.L. Shaw, conveyed to LaRue Young, together with other lands, all of Section 44, Block A–2, H & GN Ry. Co. Survey, Hemphill County, Texas, reserving: "An undivided one-half (1/2) interest inand [sic] to all of the oil, gas and other minerals in and under, and that may be produced from said land." The deed made no mention of the outstanding 1/16 non-participating royalty interest owned by FLB.

The Neels are the successors in interest to Nan R. Shaw. In 1971 and 1972, the Neels or their predecessors in title, as lessors, executed and delivered to Malouf Abraham, as lessee, oil, gas, and mineral leases covering the property. Alpar is the successor in interest to Malouf Abraham and at all times material to this proceeding, was the owner and operator of the leasehold or working interest created by the leases up to and including 15 July 1983 when the leases were assigned by Alpar to St. Paul Oil & Gas Corporation.

Hazel LaRue Young, a widow, and Lee Young and wife, Genise Young, et al., (the Young lessors) the successors in interest to LaRue Young, as lessors also executed an oil and gas lease dated 4 January 1971 to Malouf Abraham, as lessee. As the successors in interest to LaRue Young, the Young lessors, not parties to this suit, are the present record owners of the undivided 1/2 mineral interest in Section 44 conveyed to LaRue Young by the warranty deed of 15 September 1968.

After completion of the LaRue # 1 well on Section 44, the Neels asserted an adverse claim to royalties accruing in favor of the Young lessors, resulting in the filing by the Young lessors of a lawsuit against the Neels. In that case the trial court held that the Young lessors owned a 1/2 mineral interest in the subject property, and that the Neels were barred by the doctrine of estoppel by deed to assert any interest in the 1/2 mineral interest conveyed to the Young lessors. The judgment in the suit was agreed, and no appeal therefrom was taken by the Neels. Instead, the Neels instituted this action, contending that the interest reserved by FLB was a 1/16 mineral interest. The trial court rendered judgment adverse to the Neels, ruling that the interest reserved by FLB was a 1/16 non-participating royalty interest which burdened the Neels 1/2 mineral estate and, that the Neels were not entitled to receive any royalty from their leases. The trial court awarded Alpar a $5,000.00 attorney's fee.

The appellants bring seven points of error. By points of error one, two, and three, the Neels contend, in essence, that the trial court erred in finding that the general warranty deed dated 13 May 1938 from FLB, as grantor, to C.A. Wilhelm, as grantee, was effective to reserve, to FLB, one-sixteenth (1/16) of the oil, gas, and other minerals as a non-participating royalty interest that burdened one-half (1/2) of the mineral interest in the land owned by the Neels.

■ The appellants do not contend that the deed is ambiguous. It is well established that the interpretation of an unambiguous deed is a question of law for the Court. *Middleton v. Broussard,* 504 S.W.2d 839, 841 (Tex.1974); *Ulbricht v. Friedsam,* 159 Tex. 607, 325 S.W.2d 669, 672 (1959). The duty of the Court in interpreting such a deed is to ascertain the intent of the parties as expressed within the four corners of the instrument, harmonizing all parts of the deed, since the parties to the deed intend every clause to have some effect and in some measure to evidence their agreement. *Altman v. Blake,* 712 S.W.2d 117 (Tex.1986). *Alford v. Krum,* 671 S.W.2d 870, 872 (Tex.1984); *Cockrell v. Texas Gulf Sulphur Company,* 157 Tex. 10, 299 S.W.2d 672, 676 (1956).

The Neels assert that had the trial court examined and harmonized the four corners of the deed it would have ·found the interest described to be a mineral interest. That assertion is based on four contentions. First, they claim that although the reservation in the FLB deed refers to the reserved interest as a "royalty" interest, the deed did not contain the limiting language that the 1/16 interest would be paid "from actual production." Second, FLB expressly reserved the right of egress and ingress, a right generally associated with a mineral interest. Third, other material portions of the deed refer to and specifically describe an undivided 1/16 mineral interest. Finally, the Neels claim that in order to ascertain the nature of the interests reserved, it is necessary to examine the FLB deed of trust, FLB release of the deed of trust, and all subsequent deeds.

■ The Neels rely on *Watkins v. Slaughter*, 144 Tex. 179, 189 S.W.2d 699 (1945) to support their position that the FLB deed reserved a mineral interest rather than a royalty interest since the FLB deed did not contain the limiting language that the 1/16 interest would be paid "from actual production." The facts of Watkins are similar to the facts presented here. In *Watkins*, the grantor reserved a "1/16 interest in and to all of the oil, gas and other minerals in and under and that may be produced from the land" and should "receive the royalty retained herein only from actual production." The grantee received the executive right (inclusive of the right of egress and ingress) and the right to collect bonus and delay rentals.

The Neels focus on the Supreme Court's language in *Watkins* that the deed "announced unequivocally in the last clause" of the reservation sentence "that the grantor *'shall receive the royalty retained herein only from actual production of oil, gas or other minerals on said land.'* (Emphasis supplied.)" *Id.* at 700. The Neels contend that since there is no similar language in the FLB deed limiting FLB to be paid only from "actual production," the interest reserved is a mineral interest. According to the Neels, to retain a royalty interest the

words "from actual production" must be used in the description of the interest reserved. We disagree.

The *Watkins* Court made clear that the entire deed must be construed as a whole, when it concluded:

> Certainly the reservation should not be given a different meaning merely because the description of the reserved interest as a royalty interest appears in the last clause of the sentence rather than in the first clause.

*Id.* at 701. The whole of the material part of the deed was considered by the Court in order to ascertain its meaning, whether it was one sentence with different parts or different sentences and different paragraphs.

The words "from actual production" stated in *Watkins* are not exclusive words of art which must be used when expressing a party's intent to reserve a royalty rather than mineral interest. In this instance, the reservation before us provides: "[i]n the event oil and gas and/or other minerals are produced from said land, the said Bank shall receive a full one-sixteenth (1/16) portion thereof as its own property, to be paid or delivered to said Bank free of cost to it." In essence, that sentence required that the Bank's interest be paid from actual production. *See Pan American Petroleum Corp. v. Southland Royalty Co.*, 396 S.W.2d 519, 524 (Tex.Civ.App.—El Paso 1965, writ dism'd).

Furthermore, in *Watkins*, the court pointed out that:

> Had the word "royalty" appeared in the first clause ... of the deed, by which the 1/16 was reserved—that is, had that clause read "the grantor retains title to a 1/16 royalty interest"—then there could be no contention that the interest reserved was only a mineral fee interest. (cites omitted)

*Id.* at 700.

Applying that language in this instance, the first sentence of reservation in question does provide that the Grantor saved and excepted an undivided one-sixteenth (1/16) interest (same being one-half (1/2) of the usual one-half royalty). Thus, the first

sentence of the reservation before us does in legal effect provide for a 1/16 royalty interest. Therefore, as the court further said in *Watkins:* "then there could be no contention that the interest was only a mineral fee interest." Likewise, when we apply that language to the reservation before us, we must conclude that the reservation is "a non-participating royalty interest." The court in *Watkins* reached that same conclusion concerning the reservation before that court.

■ Next, the Neels contend that the expressed reservation of the right to egress and ingress is a right associated with and consistent with the ownership of a mineral interest relying on *Altman v. Blake*, 712 S.W.2d at 118–19. In *Altman*, the Supreme Court listed five essential attributes of a severed mineral estate:

> (1) the right to develop (the right of ingress and egress), (2) the right to lease (the executive right), (3) the right to receive bonus payments, (4) the right to receive delay rentals, (5) the right to receive royalty payments. (cites omitted)

*Id.* at 118.

FLB described the severed and reserved estate as a non-participating royalty interest that "shall not participate in the bonus paid for any oil, gas or other mineral lease ... nor shall it participate in the money rentals which may be paid to extend the time within which a well may be begun under the terms of any lease." The reservation sentence included "the right of ingress and egress, at all times for the purpose of storing, treating, marketing and removing the same therefrom."

■ The reservation of ingress and egress for the purposes of storing, treating, marketing and removing, is consistent with a royalty interest and does not include the purposes of exploration and development which are purposes that are normally considered part of the mineral estate. *Bagby v. Bredthauer*, 627 S.W.2d 190, 194 (Tex.App.—Austin 1981, no writ). *See Altman v. Blake*, 712 S.W.2d at 118. A warranty deed passes all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed. *Cockrell v. Texas Gulf Sulphur Company*, 157 Tex. 10, 299 S.W.2d 672, 675 (1956). In this instance, we are not persuaded that the right of ingress and egress retained is indicative of an intent to reserve a mineral rather than a royalty interest.

■ The Neels further contend that a material portion of the FLB deed refers to and specifically describes a "remaining" undivided "fifteen-sixteenths (15/16) interest in and to the oil, gas and other minerals in, to and under the above-described property ...," implying that the interest reserved is an undivided one-sixteenth (1/16) mineral interest. In that regard, the Neels refer to the second paragraph of the reservation, which reads:

> *"The remaining fifteen-sixteenth (15/16) interest in and to the oil, gas and other minerals in, to and under the above-described property* remains subject to the vendor's lien herein retained and remains further subject to the deed of trust covering the above-described property additionally securing the payment of the purchase money note hereinabove described." (Emphasis added)

First, we point out that the word interest is not modified or qualified by either the word mineral or royalty. Thus, when we look to that sentence alone no particular kind or type of interest is described. In that regard, we are not at liberty to add the word "mineral" before "interest." *See Holloway's Unknown Heirs v. Whatley*, 104 S.W.2d 646, 649–650 (Tex.Civ.App.—Beaumont, 1937), *aff'd* 133 Tex. 608, 131 S.W.2d 89 (Tex.Comm'n App.1939, opinion adopted) where the court stated that: "Certainly a grant should not be 'enlarged beyond what the particular verbiage therein contained fully warrants....'" In this instance, the predominant intent expressed in the reservation is to retain a royalty interest. We may not enlarge the royalty interest by implication or the addition of more descriptive words.

■ Lastly, the Neels contend under their first point of error, that in order to ascertain the nature of the interests re-

served, it is necessary to examine the FLB deed of trust, FLB release of the deed of trust, and all subsequent deeds. In that regard, the deed is the final repository of the terms on which the parties have agreed, and any subsequent cause of action between the parties must be based on the deed itself, *Carter v. Barclay*, 476 S.W.2d 909, 915 (Tex.Civ.App.—Amarillo 1972, no writ), and in the absence of fraud or mistake, the deed alone will be deemed to express the intention of the parties. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 524 (Tex.1982). There being no claim of fraud or mistake regarding the unambiguous instrument, we will enforce this unambiguous instrument as it is written without considering other instruments.

As a result of our foregoing discussion we conclude as a matter of law that the interest reserved by FLB was a one-sixteenth (1/16) non-participating royalty interest that burdens the Neels' one-half (1/2) mineral interest. Having disposed of the Neels' contentions under points of error one, two, and three, we overrule these points of error.

■ By their fourth point of error, the Neels claim that the trial court erred in finding that the Neels are not entitled to receive any portion of royalties retained in the Neels' oil and gas leases by reason of the non-participating royalty interest vested in the FLB and the proportionate reduction clause contained in paragraph 10 of the Neels' oil and gas leases.

The Neels argue that since each of the leases executed by them provides for a 1/8 royalty and contains a proportionate reduction clause, in the event the Neels own less than the entire mineral fee as claimed in each lease, the lessee (i.e., Alpar) must reduce the royalty payable to the Neels in the proportion that the Neels' mineral interest bears to the whole undivided mineral fee. We disagree.

Our determination that the reservation in question is a one-sixteenth (1/16) non-participating royalty interest (i.e., 1/2 of the usual 1/8 royalty) is dispositive of the appellants' fourth point of error. It is undisputed that the Youngs own an undivided 1/2 mineral interest in and to Section 44 (i.e., property in question). The Neels own the remaining 1/2 of the mineral interest of the property · in question burdened by FLB's one-sixteenth non-participating royalty interest (i.e., 1/2 of the usual 1/8 royalty) by virtue of FLB's reservation in the warranty deed dated 13 May 1938 from FLB to C.A. Wilhelm. The Neels' interest has all of the attributes of a mineral estate save and except the right to receive royalty payments for the usual 1/8 royalty. *See Klein v. Humble Oil & Refining Co.*, 126 Tex. 450, 86 S.W.2d 1077 (1935).

In *Klein*, the Steins, owners of the fee in 60 acres, conveyed the 60 acres to Klein, reserving a 1/8 royalty interest in the east 10 acres. Klein subsequently conveyed the land with the same reservation to Baker. Baker owned the 60 acres subject to the 1/8 non-participating royalty in the east 10 acres owned by Stein. Baker as lessor leased the 60 acre tract to H.H. Weinert who subsequently assigned the lease to Humble. The lease contained the usual 1/8 royalty provision. In *Klein*, Baker contended that the effect of the reservation by Stein of 1/8 of the mineral rights in the east 10 acres was a "different corpus" from the rest of the land, that Baker had no power to include the Stein estate in his lease to Weinert and that he did not purport to do so. Thus, Baker claimed that by the lease he reserved for himself as a royalty 1/8 of the oil in the west 50 acres and 1/8 of 7/8 or 7/64 of the oil in the east 10 acres.

In *Klein*, the court determined that the Steins had a 1/8 non-participating royalty interest in the east 10 acres, that the Steins were entitled to all of the royalty under the lease in question in which only 1/8 of the royalty was reserved, that Baker had no royalty interest in the east 10 acre tract, that Baker had the authority to lease the east 10 acres (i.e., as the mineral owner) for oil, that the function of the common proportional reduction clause in the lease was to effectuate the lessor warranty and reduce the estate the lessor purported to convey when there was a failure of *fee title*, and that Baker was not entitled to any portion

of the 1/8 royalty reserved in lease by virtue of the proportional clause or otherwise.

In this instance, the *Klein* principles are applicable. The Neels had the right to execute the oil and gas leases in question. However, they are not entitled to any of the 1/8 royalty reserved in the lease, since the FLB owns a 1/16 non-participating royalty interest in the tract of land and the other 1/2 of the 1/8 royalty belongs to the Youngs who own the other 1/2 of the mineral estate on the property in question.

In support of their position, the Neels claim it is unthinkable that as mineral owners they would execute oil and gas leases with no intent of receiving any of the returns from production of the minerals. Nevertheless, that is the end result when the Neels reserved only a 1/8 royalty interest in the leases in question. As owner of the right to lease they were at liberty to reserve a greater royalty interest. Also, they were entitled to bonus, delay rental, and all of the other attributes of a mineral estate, save and except the 1/16 non-participating royalty interest reserved by the FLB. The Neels fourth point of error is overruled.

By their fifth and seventh points of error, the Neels assert that the trial court erred in refusing to grant their motion for partial summary judgment and in refusing to award appellants damages for royalty due and owing to them and attorney's fees. Our determination that the reservation is a 1/16 non-participating royalty interest is dispositive of these points of error and they are overruled.

By their sixth point of error, the Neels assert that the trial court erred in finding Alpar is entitled to attorney's fees in the amount of $5,000.00. However, in their reply brief filed 8 May 1989, the Neels acknowledged that the sixth point of error was conditioned on the Neels prevailing on appeal. Consequently, our disposition of the Neels' first four points of error is dispositive of this point of error. Thus, the Neels' sixth point of error is overruled.

In summary, all of the Neels' points of error are overruled and the judgment of the trial court is in all things affirmed.