TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00606-CV







Bank One, Texas, National Association, Trustee of the G. R. White Trust;


and Bank One, Texas, National Association, Trustee of 


the Joy Lina White Trust, Appellants



v.



Ronny D. Alexander; Robin Gay Alexander; Oryx Energy Company; 


John E. Reed; CCF, Inc.; Scurlock Permian Corporation; J. L. Davis;


and L & L, Inc., Appellees







FROM THE DISTRICT COURT OF CONCHO COUNTY, 198TH JUDICIAL DISTRICT


NO. 3214-A, HONORABLE V. MURRAY JORDAN, JUDGE PRESIDING








 Bank One, Texas, National Association ("Bank One"), trustee of the G.R. White
Trust and the Joy Lina White Trust, appeals from a summary judgment awarded appellees in the
trial court. (1) We will affirm the trial-court judgment.



THE CONTROVERSY


 In a 1928 deed, G.R. White and others conveyed to appellees' predecessors-in-title
certain land in Concho County. A provision in the deed reserved in the grantors an interest in the
minerals. The parties dispute the nature of the reserved interest. Appellees contend the
provision, quoted below, reserved a 1/16 mineral interest; Bank One contends the provision
reserved a 1/16 royalty interest. On competing motions for summary judgment, the trial court
construed the provision to mean that White and the other grantors reserved a 1/16 mineral
interest. Consequently, the court held Bank One was not entitled to a 1/16 royalty on total
mineral production as it claimed, but only 1/16 of the royalty interest. In three points of error,
Bank One complains the trial court erred in its construction of the deed, and therefore in its
awarding appellees summary judgment while overruling Bank One's motion for summary
judgment. 


DISCUSSION AND HOLDINGS



 The questioned language of the deed provided as follows:



[1] Grantors herein reserve for themselves, their heirs, assigns and legal
representatives an undivided 1/16 interest in and to all minerals of every kind and
description, including oil and gas, in, upon and under said land; 


[2] but the right to control and manage and make any and all gas and oil leases or
other mineral leases upon said land is hereby granted exclusively to grantees
herein, their heirs, assigns and legal representatives, and they shall be entitled to
any and all cash bonus or bonuses paid on any and all oil and gas leases on said
land together with all cash rentals under such leases; 


[3] but an undivided 1/16 of any and all oil and gas and other minerals developed
from said land shall be owned by grantors herein, their heirs, assigns and legal
representatives.


(numbers and clause separations added). In assigning meaning to the foregoing language, we are
governed by familiar rules of construction. (2)

 There is no dispute that if the disputed language had ended with the first clause,
a 1/16 mineral interest would have been reserved by the grantor. See 1 Howard R. Williams &
Charles J. Meyers, Oil and Gas Law § 304.4, at 475 (1994 ed.) ("An instrument that grants or
reserves `the oil, gas and other minerals in, on and under' or `in and under' described land,
without further provisions relating to the minerals, creates a mineral interest."); see also Miller
v. Speed, 248 S.W.2d 250, 252 (Tex. Civ. App.--Eastland 1952, no writ). However, the initial
clause does not conclusively determine that a mineral interest was created when subsequent
language indicates the parties intended to create a royalty interest. See Ernest E. Smith &
Jacqueline L. Weaver, Texas Law of Oil and Gas § 3.5(B) (1994 ed.). We must therefore
consider clauses two and three of the questioned language of the deed.

 A mineral estate consists of the following five rights: (1) the right to develop (the
right of ingress and egress), (2) the right to lease (the executive right), (3) the right to receive
bonus payments, (4) the right to receive delay rentals, and (5) the right to receive royalty
payments. Altman v. Blake, 712 S.W.2d 117, 118 (Tex. 1986). Clause two of the questioned
language specifically conveys to the grantee "the right to control and manage and make any and
all gas and oil leases or other mineral leases upon said land," the right to bonus payments, and
the right to delay rentals. The parties therefore agree the grantors thus conveyed at a minimum
Altman's rights two through four, while reserving for themselves the fifth right--the right to receive
royalty payments. The parties dispute, however, whether the right to develop (the right to ingress
and egress) passed with the words "the right to control and manage and make any and all gas and
oil leases or other mineral leases upon said land." Appellees argue that because the right to
ingress and egress was not explicitly conveyed to the grantees, the right remained in the grantors,
citing Martin v. Snuggs, 302 S.W.2d 676, 677-78 (Tex. Civ. App.--Fort Worth 1957, writ ref'd
n.r.e.), and Miller, 248 S.W.2d at 250.

 Bank One responds that the right to control is tantamount to the right to develop;
and therefore, the right to develop passed by implication with the grantors' conveyance of the
exclusive right to lease the property. The supreme court stated as follows in French v. Chevron,
U.S.A., Inc., 38 Tex. Sup. Ct. J. 445 (Mar. 30, 1995): 



The court of appeals held that the deed was silent as to the conveyance of the right
to develop and therefore, that right was impliedly transferred to the grantee. This
conclusion is incorrect for two reasons. First, the right to develop is a correlative
right and passes with the executive rights. Day & Co. v. Texland Petroleum,
[Inc.], 786 S.W.2d 667, 669 n.1 (Tex. 1990). Second, we read the reservations
clause in this conveyance as reserving the right to develop in the grantor. It states
that the grantee has no control over "the making of any lease contract to develop
or prospect." Consequently, we also conclude that the right to develop was
reserved in the grantor.



Id. at 447 n.1 (emphasis added).

 According to French, the right to develop passed to the grantee as a correlative
right. Therefore, by the second clause quoted above, White and the other grantors conveyed all
the rights of a mineral interest except the right to royalty payments. A mineral interest stripped
of many of its component parts remains a mineral interest absent additional evidence showing a
contrary intention. See Altman, 712 S.W.2d at 118-20; Delta Drilling Co. v. Simmons, 338
S.W.2d 143, 146 (Tex. 1960); Grissom v. Guetersloh, 391 S.W.2d 167, 170-71 (Tex. Civ.
App.--Amarillo 1965, writ ref'd n.r.e.); Etter v. Texaco, Inc., 371 S.W.2d 702, 706 (Tex. Civ.
App.--Waco 1963, writ ref'd n.r.e.).

 The crux of Bank One's argument pertains to the third clause quoted above. 
Relying primarily on three reported decisions, Bank One asserts that the language, "but an
undivided 1/16 of any and all oil and gas and other minerals developed from said land shall be
owned by grantors herein, their heirs, assigns and legal representatives," signifies that the
grantors intended to reserve a royalty interest only. (Emphasis added.) 

 Bank One cites first Watkins v. Slaughter, 189 S.W.2d 699 (Tex. 1945), to
demonstrate that a deed which initially purports to reserve a mineral interest may in fact reserve
a royalty interest if subsequent language describes a fractional interest in actual production. The
Slaughter deed stated as follows:



[T]he grantor retains title to a 1/16 interest in and to all of the oil, gas and other
minerals in and under and that may be produced from said land; but it is distinctly
agreed and understood that the grantor, his heirs and assigns shall not receive any
part of the money rental paid on any future lease; and the grantee, his heirs or
assigns, shall have authority to lease said land and receive the cash bonus and
rental; and the grantor, his heirs or assigns, shall receive the royalty retained
herein only from actual production of oil, gas or other minerals on said land.



Id. at 699 (emphasis added). Had the reservation clause in Slaughter ended with the first
clause--"in and under and that may be produced from said land"--a mineral interest would have been
created. Id. at 700. However, the supreme court, after considering the reservation clause as a
whole, held a royalty interest was reserved. In coming to this conclusion, the court focused on
the fact that "the owner of the 1/16 royalty is to be paid only from production, and that he shall
receive no part of the payments of bonus or rentals, all of them belonging to the owner of the
15/16 interest, the mineral fee estate," in addition to the fact that the deed used the word
"royalty," which "has a well understood meaning in the oil and gas industry." Id. The reservation
clause in our deed does not specifically refer to a "royalty." Bank One argues, however, that we
must focus not on the label, but on the function of the clause. In other words, Bank One argues
that irrespective of whether the parties expressly used the word "royalty," the use of the word
"developed" indicates that the grantors intended to reserve a 1/16 undivided interest in the
minerals after production, thus creating a royalty interest.

 Secondly, Bank One cites the Miller decision for a similar proposition. See 248
S.W.2d at 256. Relying on the Slaughter decision, the Miller court held that "`1/24 of all oil and
gas and other minerals produced, saved and made available for market' together with the
additional provisions of the reservation, clearly disclosed an intent to reserve 1/24 of the gross
amount of oil produced." Id. (emphasis added). Bank One contends that an interest in oil and
gas "developed" is the same as an interest in oil and gas after it has been removed from the
ground, and is, therefore, a royalty interest. 

 Bank One also points to Miller for the proposition that the deed does not have to
specifically mention "royalty," as indicated in the following passage:



Unlike the Slaughter case, there was not in the reservation here under
consideration a reservation of the minerals "in and under" the land nor was the
word "royalty" used to describe the reserved interest but, as in the Slaughter case,
the deed from the Bank to Jacobs described the nature and quality of the reserved
interest and stated what incidents and rights should attach thereto. In both cases,
the grantor was not to receive any part of the bonus or delay rentals under a future
lease, nor was the grantor to have any authority to execute a lease but such rights
were expressly given to the grantee. In the instant case, the deed from the Bank
to Jacobs clearly states that the 1/24 reserved is only out of oil and gas produced,
saved and made available for market, within a certain period of time, not 1/24 of
the oil and gas in place, that is, in and under the land.



Id. at 255.

 Both the Slaughter and Miller courts were influenced heavily by the fact that the
grantor had conveyed numerous important attributes of the mineral estate. See Bruce M. Kramer,
The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of
Construction, 24 Tex. Tech. L. Rev. 1, 69-70 n.321 (1993) ("While the court was correct in
looking at the entire granting clause, the result in [Slaughter] is probably inconsistent with the
modern view that a grantor can transfer a mineral estate stripped of many of its component
parts."). See, e.g., Altman, 712 S.W.2d at 117.

 Finally, Bank One cites Neel v. Alpar Resources, Inc., 797 S.W.2d 361 (Tex.
App.--Amarillo 1990, no writ), for a recent example of the multiple ways to describe a royalty
interest. In Neel, the court held the words "from actual production," as used in Slaughter, are
unnecessary to create a royalty interest. Id. at 364. The disputed clause in Neel provided as
follows:



Said interest in and to said minerals hereby reserved is a non-participating royalty
interest and shall not participate in the bonus paid for any oil, gas or other mineral
lease covering said land, nor shall it participate in the money rentals which may
be paid to extend the time within which a well may be begun under the terms of
any lease covering said land. In the event oil, gas and/or other minerals are
produced from said land, then said Bank shall receive a full one-sixteenth (1/16th)
portion thereof as its own property, to be paid or delivered to said Bank free of
cost to it.



Id. at 362. 

 The Neel court reasoned that these words, in effect, "required that the Bank's
interest be paid from actual production." Id. at 364. Bank One contends the word "developed"
means precisely the same thing as "actual production" or "oil and gas produced, saved and made
available for market." See Slaughter, 189 S.W.2d at 700; Neel, 797 S.W.2d at 364; Miller, 248
S.W.2d at 255. Further, Bank One argues that because the deed here reserved in the grantors the
right to "1/16 of any and all oil and gas and other minerals developed from said land," the
grantors reserved a fractional share of the oil and gas which has been extracted, and therefore
reserved a royalty interest. Bank One also points to our definition of a royalty interest in Bagby
v. Bredthauer, 627 S.W.2d 190, 194 (Tex. App.--Austin 1981, no writ):



A "royalty interest" consists in the right to a fractional share of the mineral
production, the owner of which typically has no share in the development and
executive rights relative to the mineral estate; he may not explore for the minerals
himself and is not a necessary party to a lease of the mineral estate. In the
ordinary case, he simply possesses the right to his specified proportionate share of
production once the minerals are produced. His interest is in "land," but since he
may not enter the premises for the purposes of exploration and development, his
interest is viewed as an incorporeal interest in the land.



Id. (emphasis added). 

 Bank One insists that "produced from" and "developed from" are indistinguishable,
in that both refer to minerals after they have been removed from the ground. According to
Williams and Meyers's Manual of Oil and Gas Terms, the word "develop" has multiple meanings: 
"the word `develop' as used in the oil and gas industry contemplates any step taken in the search
for, capture, production and marketing of hydrocarbons. Thus the word `develop' as used in the
industry clearly contemplates and includes exploration." 8 Howard R. Williams & Charles J.
Meyers, Oil and Gas Law, at 281 (1994 ed.) (quoting Gorenflo v. Texaco, Inc., 566 F.Supp. 722,
727 (M.D. La. 1983), aff'd, 735 F.2d 835 (5th Cir. 1984)). The term "produced," according to
Williams and Meyers, "refer[s] to production in measurable quantities or to production in
commercial quantities." Williams & Meyers, supra at 852. Notably, the phrase "produced and
saved" is "persuasive that the interest is a royalty." Id. at 853. The term "developed," does not
invoke a similar connotation. We are unconvinced that "developed" encompasses the meaning
assigned to it by Bank One.

 Assuming arguendo that the third clause signifies an intent to reserve a royalty
interest, we must still ascertain the parties' intentions by harmonizing and giving effect to all
provisions of the deed. Luckel, 819 S.W.2d at 461. We believe the decision in French controls
our decision here. In French, the grantors conveyed in the first clause a 1/656.17 mineral interest,
but reserved in the next clause the first four rights described in Altman--all development rights,
leasing rights, bonuses, and delay rentals--leaving for the grantee only the remaining or fifth right
to royalty payments. (3) French, 38 Tex. Sup. Ct. J. at 447; Altman, 712 S.W.2d at 118. In
contrast, our deed conveys to the grantees certain land in fee; reserves for the grantors in the first
clause a mineral interest; conveys to the grantees in the second clause the first four Altman rights;
and reserves for the grantors in the third clause the fifth Altman right to royalty payments. In
concluding that a mineral interest was conveyed and that the grantees were due only 1/656.17 of
royalty and not a 1/656.17 royalty on production, the supreme court stated in French that the
reservation of developmental rights, leasing rights, bonuses, and delay rentals "would be
redundant and would serve no purpose whatsoever if the interests [sic] in minerals being conveyed
was a . . . royalty interest" because a royalty interest does not encompass these rights. French,
38 Tex. Sup. Ct. J. at 447. In the present appeal, if the grantors had conveyed the land in fee,
intending to reserve a royalty interest only, a conveyance of the first four Altman rights to the
grantees would be redundant and meaningless since a royalty interest does not encompass these
rights. See Prairie Producing Co. v. Schlachter, 786 S.W.2d 409, 412-13 (Tex. App.--Texarkana
1990, writ denied) ("Indeed, the rights expressly granted and reserved in this instance would be
inconsistent with the conveyance of a mere royalty interest. For example, the right of ingress and
egress for the purpose of mining and drilling is conveyed. A royalty owner has no right to
explore and drill."). To give effect to all three clauses of the reservation, we conclude that a 1/16
mineral interest was reserved without the right to develop, the right to lease, the right to bonus
payments, and the right to delay rentals. Therefore, the grantors' successors-in-interest are
entitled to a 1/16 of royalty.

 Bank One's points of error one, two, and three are therefore overruled. We affirm
the trial-court judgment.



 

 John Powers, Justice


Before Justices Powers, Kidd and B. A. Smith


Affirmed


Filed: July 12, 1995


Do Not Publish Released for publication September 13, 1995. Tex. R. App. P. 90(c).
1.   The appellees are: Ronny D. Alexander, Robin Gay Alexander, Oryx Energy Company,
John E. Reed, CCF, Inc., Scurlock Permian Corporation, J.L. Davis, and L & L, Inc. 
2.   Neither Bank One nor the appellees contend the deed is ambiguous; the proper
construction is therefore a question of law for the court. Altman v. Blake, 712 S.W.2d 117,
118 (Tex. 1986). We must ascertain the intent of the parties by looking to the "four corners"
of the deed. Luckel v. White, 819 S.W.2d 459, 461 (Tex. 1991); Altman, 712 S.W.2d at 118. 
That is to say, "the intention of the parties must be gathered from the entire instrument, and
not from some isolated clause or paragraph." Bumpass v. Bond, 114 S.W.2d 1172, 1174
(Tex. 1938). Another canon of construction requires that we harmonize all provisions
of the deed in ascertaining the parties' intention, even if some appear to be in conflict. 
Altman, 712 S.W.2d at 118; Woods v. Sims, 273 S.W.2d 617, 620-21 (Tex. 1954); Elick v.
Champlin Petroleum Co., 697 S.W.2d 1, 3 (Tex. App.--Houston [14th Dist.] 1985, writ ref'd
n.r.e.). 

 We may orchestrate the "four corners" canon with the harmonizing canon. See, e.g.,
Luckel, 819 S.W.2d at 461; see generally Bruce M. Kramer, The Sisyphean Task of
Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction, 24 Tex.
Tech. L. Rev. 1, 71 (1993). 
3.   The second clause in French provided as follows:


It is understood and agreed that this conveyance is a royalty interest only, and
that neither the Grantee, nor his heirs or assigns shall ever have any interest in
the delay or other rentals or any revenues or monies received or derived from the
leasing of said lands present or future or any part thereof, or the renewal or
extension of any lease or leases now on said lands or any part thereof. Neither
the Grantee herein nor his heirs or assigns shall ever have any control over the
leasing of said lands or any part thereof or the renewal or extending of any lease
thereon or for the making of any lease contract to develop or prospect the same
for oil, gas or other minerals, which is hereby specifically reserved in the
Grantor.


French, 38 Tex. Sup. Ct. J. at 446.



sing rights, bonuses, and delay rentals "would be
redundant and would serve no purpose whatsoever if the interests [sic] in minerals being conveyed
was a . . . royalty interest" because a royalty interest does not encompass these rights. French,
38 Tex. Sup. Ct. J. at 447. In the present appeal, if the grantors had conveyed the land in fee,
intending to reserve a royalty interest only, a conveyance of the first four Altman rights to the
grantees would be redundant and meaningless since a royalty interest does not encompass these
rights. See Prairie Producing Co. v. Schlachter, 786 S.W.2d 409, 412-13 (Tex. App.--Texarkana
1990, writ denied) ("Indeed, the rights expressly granted and reserved in this instance would be
inconsistent with the conveyance of a mere royalty interest. For example, the right of ingress and
egress for the purpose of mining and drilling is conveyed. A royalty owner has no right to
explore and drill."). To give effect to all three clauses of the reservation, we conclude that a 1/16
mineral interest was reserved without the right to develop, the right to lease, the right to bonus
payments, and the right to delay rentals. Therefore, the grantors' successors-in-interest are
entitled to a 1/16 of royalty.

 Bank One's points of error one, two, and three are therefore overruled. We affirm
the trial-court judgment.



 

 John Powers, Justice


Before Justices Powers, Kidd and B. A. Smith


Affirmed


Filed: July 12, 1995


Do Not Publish Released for publication September 13, 1995. Tex. R. App. P. 90(c).
1.   The appellees are: Ronny D. Alexander, Robin Gay Alexander, Oryx Energy Company,
John E. Reed, CCF, Inc., Scurlock Permian Corporation, J.L. Davis, and L & L, Inc. 
2.   Neither Bank One nor the appellees contend the deed is ambiguous; the proper
construction is therefore a question of law for the court. Altman v. Blake, 712 S.W.2d 117,
118 (Tex. 1986). We must ascertain the intent of the parties by looking to the "four corners"
of the deed. Luckel v. White, 819 S.W.2d 459, 461 (Tex. 1991); Altman, 712 S.W.2d at 118. 
That is to say, "the intention of the parties must be gathered from the entire instrument, and
not from some isolated clause or paragraph." Bumpass v. Bond, 114 S.W.2d 1172, 1174
(Tex. 1938). Another canon of construction requires that we harmonize all provisions
of the deed in ascertaining the parties' intention, even if some appear to be in conflict. 
Altman, 712 S.W.2d at 118; Woods v. Sims, 273 S.W.2d 617, 620-21 (Tex. 1954); Elick v.
Champlin Petroleum Co., 697 S.W.2d 1, 3 (Tex. App.--Houston [14th Dist.] 1985, writ ref'd
n.r.e.). 

 We may orchestrate the "four corners" canon with the harmonizing canon. See, e.g.,
Luckel, 819 S.W.2d at 461; s