BANK ONE, TEXAS, NATIONAL ASSO-CIATION, Trustee of the G.R. White Trust; and Bank One, Texas, National Association, Trustee of the Joy Lina White Trust, Appellants,

v.

Ronny D. ALEXANDER; Robin Gay Alexander; Oryx Energy Company; John E. Reed; CCF, Inc.; Scurlock Permian Corporation; J.L. Davis; and L & L, Inc., Appellees.

No. 03–94–00606–CV.

Court of Appeals of Texas, Austin.

July 12, 1995.

Publication Ordered Sept. 13, 1995.

Rehearing Overruled Sept. 13, 1995.

Dabney D. Bassel, Law, Snakard & Gambill, Fort Worth, for appellants.

Bill Kelton, San Angelo, for Ronny D. and Robin Gay Alexander.

W. Chris Boyer, Crenshaw, Dupree & Milam, L.L.P., Lubbock, for CCF, Inc. and John E. Reed.

C. Medford Owen, Jr., Bullock, Scott, Neisig & Owens, Midland, for J.L. Davis.

Don M. Connally, Abilene, for L & L, Inc.

Greg W. Curry, Thompson & Knight, Dallas, for Oryx Energy Company.

Jeril R. Benedict, Scurlock Permian Corporation, Houston, for Scurlock Permian Corp.

Before POWERS, KIDD and B.A. SMITH, JJ.

POWERS, Justice.

Bank One, Texas, National Association ("Bank One"), trustee of the G.R. White Trust and the Joy Lina White Trust, appeals from a summary judgment awarded appellees in the trial court.[1] We will affirm the trial-court judgment.

## THE CONTROVERSY

In a 1928 deed, G.R. White and others conveyed to appellees' predecessors-in-title certain land in Concho County. A provision in the deed reserved in the grantors an interest in the minerals. The parties dispute the nature of the reserved interest. Appellees contend the provision, quoted below, reserved a $\frac{1}{16}$ mineral interest; Bank One contends the provision reserved a $\frac{1}{16}$ royalty interest. On competing motions for summary judgment, the trial court construed the provision to mean that White and the other grantors reserved a $\frac{1}{16}$ mineral interest. Consequently, the court held Bank One was not entitled to a $\frac{1}{16}$ royalty on total mineral production as it claimed, but only $\frac{1}{16}$ of the royalty interest. In three points of error, Bank One complains the trial court erred in its construction of the deed, and therefore in its awarding appellees summary judgment while overruling Bank One's motion for summary judgment.

## DISCUSSION AND HOLDINGS

The questioned language of the deed provided as follows:

[1] Grantors herein reserve for themselves, their heirs, assigns and legal representatives an undivided $\frac{1}{16}$ interest in and to all minerals of every kind and description, including oil and gas, in, upon and under said land;

[2] but the right to control and manage and make any and all gas and oil leases or other mineral leases upon said land is hereby granted exclusively to grantees herein, their heirs, assigns and legal representatives, and they shall be entitled to any and all cash bonus or bonuses paid on any and all oil and gas leases on said land together with all cash rentals under such leases;

[3] but an undivided $\frac{1}{16}$ of any and all oil and gas and other minerals developed from said land shall be owned by grantors herein, their heirs, assigns and legal representatives.

(numbers and clause separations added). In assigning meaning to the foregoing language,

---

1. The appellees are: Ronny D. Alexander, Robin Gay Alexander, Oryx Energy Company, John E. Reed, CCF, Inc., Scurlock Permian Corporation, J.L. Davis, and L & L, Inc.

we are governed by familiar rules of construction.[2]

■ There is no dispute that if the disputed language had ended with the first clause, a 1/16 mineral interest would have been reserved by the grantor. *See* 1 Howard R. Williams & Charles J. Meyers, *Oil and Gas Law* § 304.4, at 475 (1994 ed.) ("An instrument that grants or reserves 'the oil, gas and other minerals *in, on and under*' or '*in and under*' described land, without further provisions relating to the minerals, creates a mineral interest."); *see also Miller v. Speed,* 248 S.W.2d 250, 252 (Tex.Civ.App.—Eastland 1952, no writ). However, the initial clause does not conclusively determine that a mineral interest was created when subsequent language indicates the parties intended to create a royalty interest. *See* Ernest E. Smith & Jacqueline L. Weaver, *Texas Law of Oil and Gas* § 3.5(B) (1994 ed.). We must therefore consider clauses two and three of the questioned language of the deed.

■ A mineral estate consists of the following five rights: (1) the right to develop (the right of ingress and egress), (2) the right to lease (the executive right), (3) the right to receive bonus payments, (4) the right to receive delay rentals, and (5) the right to receive royalty payments. *Altman v. Blake,* 712 S.W.2d 117, 118 (Tex.1986). Clause two of the questioned language specifically conveys to the grantee "the right to control and manage and make any and all gas and oil leases or other mineral leases upon said land," the right to bonus payments, and the right to delay rentals. The parties therefore agree the grantors thus conveyed at a minimum *Altman's* rights two through four, while reserving for themselves the fifth right—the

right to receive royalty payments. The parties dispute, however, whether the right to develop (the right to ingress and egress) passed with the words "the right to control and manage and make any and all gas and oil leases or other mineral leases upon said land." Appellees argue that because the right to ingress and egress was not explicitly conveyed to the grantees, the right remained in the grantors, citing *Martin v. Snuggs,* 302 S.W.2d 676, 677–78 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n.r.e.), and *Miller,* 248 S.W.2d at 250.

Bank One responds that the right to control is tantamount to the right to develop; and therefore, the right to develop passed by implication with the grantors' conveyance of the exclusive right to lease the property. The supreme court stated as follows in *French v. Chevron, U.S.A., Inc.,* 896 S.W.2d 795 (Tex.1995):

> The court of appeals held that the deed was silent as to the conveyance of the right to develop and therefore, that right was impliedly transferred to the grantee. This conclusion is incorrect for two reasons. First, the *right to develop is a correlative right and passes with the executive rights. Day & Co. v. Texland Petroleum, [Inc.],* 786 S.W.2d 667, 669 n. 1 (Tex.1990). Second, we read the reservations clause in this conveyance as reserving the right to develop in the grantor. It states that the grantee has no control over "the making of any lease contract to develop or prospect." Consequently, we also conclude that the right to develop was reserved in the grantor.

*Id.* at 797 n. 1 (emphasis added).

■ According to *French,* the right to develop passed to the grantee as a correlative

<hr>

**2.** Neither Bank One nor the appellees contend the deed is ambiguous; the proper construction is therefore a question of law for the court. *Altman v. Blake,* 712 S.W.2d 117, 118 (Tex.1986). We must ascertain the intent of the parties by looking to the "four corners" of the deed. *Luckel v. White,* 819 S.W.2d 459, 461 (Tex.1991); *Altman,* 712 S.W.2d at 118. That is to say, "the intention of the parties must be gathered from the entire instrument, and not from some isolated clause or paragraph." *Bumpass v. Bond,* 131 Tex. 266, 114 S.W.2d 1172, 1174 (1938).

Another canon of construction requires that we harmonize all provisions of the deed in ascertaining the parties' intention, even if some appear to be in conflict. *Altman,* 712 S.W.2d at 118; *Woods v. Sims,* 154 Tex. 59, 273 S.W.2d 617, 620–21 (1954); *Elick v. Champlin Petroleum Co.,* 697 S.W.2d 1, 3 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

We may orchestrate the "four corners" canon with the harmonizing canon. *See, e.g., Luckel,* 819 S.W.2d at 461; *see generally* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction,* 24 Tex.Tech.L.Rev. 1, 71 (1993).

3

right. Therefore, by the second clause quoted above, White and the other grantors conveyed all the rights of a mineral interest *except* the right to royalty payments. A mineral interest stripped of many of its component parts remains a mineral interest absent additional evidence showing a contrary intention. *See Altman,* 712 S.W.2d at 118–20; *Delta Drilling Co. v. Simmons,* 161 Tex. 122, 338 S.W.2d 143, 146 (1960); *Grissom v. Guetersloh,* 391 S.W.2d 167, 170–71 (Tex.Civ. App.—Amarillo 1965, writ ref'd n.r.e.); *Etter v. Texaco, Inc.,* 371 S.W.2d 702, 706 (Tex.Civ. App.—Waco 1963, writ ref'd n.r.e.).

The crux of Bank One's argument pertains to the third clause quoted above. Relying primarily on three reported decisions, Bank One asserts that the language, "but an undivided ⅟₁₆ of any and all oil and gas and other minerals *developed* from said land shall be owned by grantors herein, their heirs, assigns and legal representatives," signifies that the grantors intended to reserve a royalty interest only. (Emphasis added.)

Bank One cites first *Watkins v. Slaughter,* 144 Tex. 179, 189 S.W.2d 699 (1945), to demonstrate that a deed which initially purports to reserve a mineral interest may in fact reserve a royalty interest if subsequent language describes a fractional interest in actual production. The *Slaughter* deed stated as follows:

[T]he grantor retains title to a ⅟₁₆ interest in and to all of the oil, gas and other minerals in and under and that may be produced from said land; but it is distinctly agreed and understood that the grantor, his heirs and assigns shall not receive any part of the money rental paid on any future lease; and the grantee, his heirs or assigns, shall have authority to lease said land and receive the cash bonus and rental; and the grantor, his heirs or assigns, shall receive the *royalty* retained herein only from *actual production* of oil, gas or other minerals on said land.

*Id.,* 189 S.W.2d at 699 (emphasis added). Had the reservation clause in *Slaughter* ended with the first clause—"in and under and that may be produced from said land"—a mineral interest would have been created. *Id.,* 189 S.W.2d at 700. However, the su-

preme court, after considering the reservation clause as a whole, held a royalty interest was reserved. In coming to this conclusion, the court focused on the fact that "the owner of the ⅟₁₆ royalty is to be paid only from production, and that he shall receive no part of the payments of bonus or rentals, all of them belonging to the owner of the ¹⁵⁄₁₆ interest, the mineral fee estate," in addition to the fact that the deed used the word "royalty," which "has a well understood meaning in the oil and gas industry." *Id.* The reservation clause in our deed does not specifically refer to a "royalty." Bank One argues, however, that we must focus not on the label, but on the function of the clause. In other words, Bank One argues that irrespective of whether the parties expressly used the word "royalty," the use of the word "developed" indicates that the grantors intended to reserve a ⅟₁₆ undivided interest in the minerals after production, thus creating a royalty interest.

Secondly, Bank One cites the *Miller* decision for a similar proposition. *See* 248 S.W.2d at 256. Relying on the *Slaughter* decision, the *Miller* court held that " '⅟₂₄ of all oil and gas and other minerals *produced, saved and made available for market*' together with the additional provisions of the reservation, clearly disclosed an intent to reserve ⅟₂₄ of the gross amount of oil produced." *Id.* (emphasis added). Bank One contends that an interest in oil and gas "developed" is the same as an interest in oil and gas after it has been removed from the ground, and is, therefore, a royalty interest.

Bank One also points to *Miller* for the proposition that the deed does not have to specifically mention "royalty," as indicated in the following passage:

Unlike the *Slaughter* case, there was not in the reservation here under consideration a reservation of the minerals "in and under" the land nor was the word "royalty" used to describe the reserved interest but, as in the *Slaughter* case, the deed from the Bank to Jacobs described the nature and quality of the reserved interest and stated what incidents and rights should attach thereto. In both cases, the grantor was not to receive any part of the bonus or delay rentals under a future lease, nor was

the grantor to have any authority to execute a lease but such rights were expressly given to the grantee. In the instant case, the deed from the Bank to Jacobs clearly states that the ½₄ reserved is only out of oil and gas produced, saved and made available for market, within a certain period of time, not ½₄ of the oil and gas in place, that is, in and under the land.

*Id.* at 255.

Both the *Slaughter* and *Miller* courts were influenced heavily by the fact that the grantor had conveyed numerous important attributes of the mineral estate. *See* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction,* 24 Tex.Tech. L.Rev. 1, 69–70 n. 321 (1993) ("While the court was correct in looking at the entire granting clause, the result in [*Slaughter*] is probably inconsistent with the modern view that a grantor can transfer a mineral estate stripped of many of its component parts."). *See, e.g., Altman,* 712 S.W.2d at 117.

Finally, Bank One cites *Neel v. Alpar Resources, Inc.,* 797 S.W.2d 361 (Tex.App.—Amarillo 1990, no writ), for a recent example of the multiple ways to describe a royalty interest. In *Neel,* the court held the words "from actual production," as used in *Slaughter,* are unnecessary to create a royalty interest. *Id.* at 364. The disputed clause in *Neel* provided as follows:

> Said interest in and to said minerals hereby reserved is a non-participating royalty interest and shall not participate in the bonus paid for any oil, gas or other mineral lease covering said land, nor shall it participate in the money rentals which may be paid to extend the time within which a well may be begun under the terms of any lease covering said land. In the event oil, gas and/or other minerals are produced from said land, then said Bank shall receive a full one-sixteenth (⅟₁₆th) portion thereof as its own property, to be paid or delivered to said Bank free of cost to it.

*Id.* at 362.

The *Neel* court reasoned that these words, in effect, "required that the Bank's interest be paid from actual production." *Id.* at 364. Bank One contends the word "developed"

means precisely the same thing as "actual production" or "oil and gas produced, saved and made available for market." *See Slaughter,* 189 S.W.2d at 700; *Neel,* 797 S.W.2d at 364; *Miller,* 248 S.W.2d at 255. Further, Bank One argues that because the deed here reserved in the grantors the right to "⅟₁₆ of any and all oil and gas and other minerals developed from said land," the grantors reserved a fractional share of the oil and gas which has been extracted, and therefore reserved a royalty interest. Bank One also points to our definition of a royalty interest in *Bagby v. Bredthauer,* 627 S.W.2d 190, 194 (Tex.App.—Austin 1981, no writ):

> A "royalty interest" consists in the right to a fractional share of the mineral production, the owner of which typically has no share in the development and executive rights relative to the mineral estate; he may not explore for the minerals himself and is not a necessary party to a lease of the mineral estate. In the ordinary case, he simply possesses the right to his specified proportionate share of production *once the minerals are produced.* His interest is in "land," but since he may not enter the premises for the purposes of *exploration and development,* his interest is viewed as an incorporeal interest in the land.

*Id.* (emphasis added).

Bank One insists that "produced from" and "developed from" are indistinguishable, in that both refer to minerals after they have been removed from the ground. According to Williams and Meyers's *Manual of Oil and Gas Terms,* the word "develop" has multiple meanings: "the word 'develop' as used in the oil and gas industry contemplates any step taken in the search for, capture, production and marketing of hydrocarbons. Thus the word 'develop' as used in the industry clearly contemplates and includes exploration." 8 Howard R. Williams & Charles J. Meyers, *Oil and Gas Law,* at 281 (1994 ed.) (quoting *Gorenflo v. Texaco, Inc.,* 566 F.Supp. 722, 727 (M.D.La.1983), *aff'd,* 735 F.2d 835 (5th Cir.1984)). The term "produced," according to Williams and Meyers, "refer[s] to production in measurable quantities or to production in commercial quantities." Williams & Meyers, *supra* at 852. Notably, the phrase "produced and saved" is "persuasive that the

interest is a royalty." *Id.* at 853. The term "developed," does not invoke a similar connotation. We are unconvinced that "developed" encompasses the meaning assigned to it by Bank One.

Assuming arguendo that the third clause signifies an intent to reserve a royalty interest, we must still ascertain the parties' intentions by harmonizing and giving effect to all provisions of the deed. *Luckel,* 819 S.W.2d at 461. We believe the decision in *French* controls our decision here. In *French,* the grantors *conveyed* in the first clause a ⅛₅₆.₁₇ mineral interest, but *reserved* in the next clause the first four rights described in *Altman*—all development rights, leasing rights, bonuses, and delay rentals—leaving for the grantee only the remaining or fifth right to royalty payments.[3] *French,* 896 S.W.2d at 797; *Altman,* 712 S.W.2d at 118. In contrast, our deed conveys to the grantees certain land in fee; *reserves* for the grantors in the first clause a mineral interest; *conveys* to the grantees in the second clause the first four *Altman* rights; and *reserves* for the grantors in the third clause the fifth *Altman* right to royalty payments. In concluding that a mineral interest was conveyed and that the grantees were due only ⅛₅₆.₁₇ *of* royalty and not a ⅛₅₆.₁₇ royalty on production, the supreme court stated in *French* that the reservation of developmental rights, leasing rights, bonuses, and delay rentals "would be redundant and would serve no purpose whatsoever if the interests [sic] in minerals being conveyed was a ... royalty interest" because a royalty interest does not encompass these rights. *French,* 896 S.W.2d at 798. In the present appeal, if the grantors had conveyed the land in fee, intending to reserve a royalty interest only, a conveyance of the first four *Altman* rights to the grantees would be redundant and meaningless since a royalty interest does not encompass these rights. *See Prairie Producing Co. v. Schlachter,* 786

S.W.2d 409, 412–13 (Tex.App.—Texarkana 1990, writ denied) ("Indeed, the rights expressly granted and reserved in this instance would be inconsistent with the conveyance of a mere royalty interest. For example, the right of ingress and egress for the purpose of mining and drilling is conveyed. A royalty owner has no right to explore and drill."). To give effect to all three clauses of the reservation, we conclude that a ⅟₁₆ mineral interest was reserved without the right to develop, the right to lease, the right to bonus payments, and the right to delay rentals. Therefore, the grantors' successors-in-interest are entitled to a ⅟₁₆ *of* royalty.

Bank One's points of error one, two, and three are therefore overruled. We affirm the trial-court judgment.

---

**3.** The second clause in *French* provided as follows:

> It is understood and agreed that this conveyance is a royalty interest only, and that neither the Grantee, nor his heirs or assigns shall ever have any interest in the delay or other rentals or any revenues or monies received or derived from the leasing of said lands present or future or any part thereof, or the renewal or extension of any lease or leases now on said lands or any part thereof. Neither the Grantee herein nor his heirs or assigns shall ever have any control over the leasing of said lands or any part thereof or the renewal or extending of any lease thereon or for the making of any lease contract to develop or prospect the same for oil, gas or other minerals, which is hereby specifically reserved in the Grantor.

*French,* 896 S.W.2d at 796.