DELTA DRILLING COMPANY v. MAXWELL D. SIMMONS ET AL.

Nos. A-7451 and A-7452. Decided July 6, 1960.
Rehearing Overruled October 5, 1960.
(338 S.W. 2d Series 143)

123

*Kliewer & Roach* and *Edward Kliewer, Jr.*, of Dallas for petitioner.

If the Court of Civil Appeals correctly construed the 1/8 interest in the minerals conveyed to J. C. Hawkins (and to petitioner, his successor in interest) to be non participating as to the right to execute oil, gas and mineral leases and to be subject to the E. R. Langham-Simmons leace, the Court of Civil Appeals errer in holding that petitioner is not entitled to receive 1/8 of the overriding royalty interest reserved in such lease. McMahon v. Christman, 157 Texas 403, 303 S.W. 2d 341, and 304 S.W. 2d 267; Schlittler v. Smith, 128 Texas 628, 101 S.W. 2d 543; Garrett v. Dils, 157 Texas 92, 299 S.W. 2d 904.

*Spruiell, Lowery, Potter, Lasater & Guinn* and *Wilbert Lasater*, of Tyler, for respondents.

In response cited Tipps v. Bodine, 101 S.W. 2d 1076; Ditto v. Piper, 244 S.W. 2d 547; McBride v. Hutson, 157 Texas 632, 306 S.W. 2d 888.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

This oil and gas case involves the construction of an instrument, a printed form, which is self-styled a "Mineral Deed, Texas Standard Form." The problems arise because of the words typed into some of the blanks in the form.

The land in question was subject to an oil and gas lease reserving to the lessor a royalty of one-eighth. The lessor then executed this instrument which, in the granting clause, conveyed to the grantees an undivided one-fourth interest in all the minerals. The instrument also provided in part (with the inserted typewritten words here italicized) that it was understood that in the event the existing lease terminated, "an undivided *none* of the lease interest and all future rentals * * *

and other mineral privileges shall be owned by said Grantee, owning *one-fourth 1/4* of all oil, gas and other minerals in and under said lands, together with *no* interests in all future rents."

The existing lease terminated, and the lessor executed another lease which provided for a royalty of one-eighth and an overriding royalty of 1/16 of 7/8. The questions are whether the grantees in the "mineral deed" acquired the right to execute leases on the interests acquired in the "mineral deed," and the extent of the interests acquired by the grantees in the "mineral deed." The trial court held that because the grantor had reserved the right to lease the mineral estate, the grantees in the "mineral deed" did not have the right to execute leases, and that the grantees were entitled to participate in the "usual" one-eighth royalty but not in the overriding royalty. 325 S.W. 2d 222. We agree that the grantees did not acquire the right to execute leases, but we further hold that the grantees are entitled to *their proportionate part of the royalty reserved in the subsequent lease, including the overriding royalty.*

W. P. Langham, treated here as lessor of the oil and gas leases as well as the grantor in the "mineral deed," executed an oil and gas lease to Sanders. It reserved a royalty of one-eighth. Thereafter, in 1934, Langham executed the "mineral deed" to "Nivla Oil Corporation and J. C. Hawkins — each owning one-half." The petitioner, Delta Drilling Company, herein called Delta, now owns the 1/8th mineral interest which Hawkins acquired as grantee in the conveyance. Nivla Oil Company and the right acquired by it in the other 1/8th mineral interest are not involved here. The respondents Simmons et al. have succeeded to the rights of the lessor and grantor, Langham. Simmons brought this suit, which we shall regard as one for a declaratory judgment, to determine the rights of Delta (as Hawkins' successor) in the "mineral deed."

In the pertinent portions of the "mineral deed" which are next set out, the words which are *italicized* are those which were typed into the printed form:

Langham, for $10 cash paid by Nivla and Hawkins "each owning one-half" and called "grantee," granted, sold and conveyed to Nivla and Hawkins "an undivided *one-fourth* (1/4) interest in and to all the oil, gas and other minerals in and under, and that may be produced from the following described land * * *"

After the description, the instrument continues:

"Together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom.

"Said land being now under an oil and gas lease executed in favor of *R. B. Sanders,* it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes *one-fourth (1/4)* of all of the oil royalty, and gas royalty due to be paid under the terms of said lease.

"It is understood and agreed that *NONE* of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said *Grantee* and in event that the above described lease for any reason becomes cancelled or forfeited, then and in that event an undivided *NONE* of the lease interest and all future rentals on said land for oil, gas and other mineral privileges shall be owned by said Grantee,owning *one-fourth (1/4)* of all oil, gas and other minerals in and under said lands, together with *NO* interests in all future rents."

The instrument concludes with the usual habendum clause and a covenant of general warranty.

As stated, the lease to Sanders did become "cancelled or forfeited," and Langham thereafter executed another lease providing for an overriding royalty of 1/16 of 7/8 as well as the usual 1/8 royalty.

1. *The right to execute leases.*

Delta, as successor to Hawkins, contends that because the granting clause conveys an undivided 1/4th mineral interest, it is entitled to execute leases on its interest, which is half of the 1/4th granted, or an 1/8th mineral interest. Simmons contends, and the Court of Civil Appeals held, that the grant of the mineral interest was limited by the provision of the "mineral deed" wherein it is stated that, "It is understood and agreed that * * * in event the above described lease [to Sanders] for any reason becomes cancelled or forfeited, then * * * an undivided *none* of the lease interest * * * and other mineral privileges shall be owned by said grantee. * * *"

■ We agree with the Court of Civil Appeals in this regard. In construing the words "lease interest," this Court in *Garrett v. Dils Company* (1957), 157 Texas 92, 299 S.W. 2d 904, held that the words meant the right to lease.[1] Under that holding, and under the facts of this case, the words "lease interest" mean the right to execute oil and gas leases. The effect of the instrument in providing that none of the rights to execute leases passed to, or would be owned by the grantee, was to limit the grant and to retain in the grantor the right to execute leases upon the mineral interests which were conveyed. We therefore hold that Delta, as Hawkins' successor, did not obtain the right to execute leases on its mineral interests and that such rights were reserved by the grantor Langham and his successors.

■ *The right to a free royalty of 1/8 of the total production.*

Delta next contends that because the "mineral deed" conveyed to Hawkins an undivided 1/8th of the minerals, it (as Hawkins' successor) is entitled to 1/8th of the total production as a free royalty. We overrule that contention. The mineral interests which Delta acquired in the "mineral deed" were subject to being leased, as they were by Langham. When these interests were leased, Delta was and is entitled to 1/8th of the royalty reserved in the instrument leasing the mineral interests of Delta.

### 3. *Participation in the overriding royalty.*

Since Delta, as successor to Hawkins, is the owner of 1/8th of the mineral estate, Simmons concedes that it is entitled to 1/8th of the 1/4th royalty provided for in the lease no win effect. But Simmons contends that Delta is not entitled to any part of the 1/16th of 7/8th overriding royalty reserved to the grantor, Langham, in that lease.

Since, under our first holding, Langham retained the right to lease the mineral interests conveyed to Hawkins, Hawkins and his successor Delta are entitled to the royalty provided in the

---

1.—In Garrett v. Dils Co., supra, the parties inserted the fraction "1/8" instead of "none," as was done in the instant case, in the form wherein it read, in substance: "If the existing lease is terminated, then an undivided _____ of the lease interest shall be owned by grantee." The Court held, "That can have no other meaning than that the grantee shall have the right to lease an undivided one-eighth interest in the minerals * * · ' 157 Texas 92, 96, 299 S.W. 2d at 907. This interpretation of the words "l·· se interest" is the same as that of the Supreme Court of Kansas in Skelly · ' Co. v. Cities Service Oil Co. (1945), 160 Kan. 226, 160 P. 2d 246, at 250.

lease executed for them by Langham.[2] Of course, whether the interest created or reserved in an instrument is an overriding royalty or something else depends upon the true nature and the wording of the particular conveyance which gives rise to the interest. Calling an interest an overriding royalty would not be conclusive of its true status. The instrument here says:

"Lessor reserves * * * a one-sixteenth of seven-eighths (1/16th of 7/8th) overriding royalty interest, free and clear of all cost of development, except taxes."

The interest thus reserved has the characteristics of a royalty interest: it is an expense-free obligation (except as to taxes), payable as a specified share of the gross production, and is to continue throughout the life of the lease. We believe, therefore, that under the facts and circumstances of this case, the interest reserved is an overriding royalty interest.

Where it was determined that the instrument before the Court created an overriding royalty, this Court has held that the overriding royalty was a royalty interest. *McMahon v. Christmann* (1957), 157 Texas 403, 303 S.W. 2d 341, 304 S.W. 2d 267. Delta is therefore entitled to a 1/8th part of all the royalty provided in the instrument which leased its interest, and that 1/8th of the 1/8th royalty of the 1/16th of the 1/8th overriding royalty. *Richardson v. Hart* (1945), 143 Texas 392, 185 S.W. 2d 563.

Simmons concedes that this Court has held that overriding royalty is royalty. But he contends that the language in *Tipps v. Bodine,* 1936, 101 S.W. 2d 1076, writ refused, requires a holding, under the wording of the "mineral deed," that Delta is not entitled to participate in the overriding royalty. In *Tipps v. Bodine,* the parties, as here, used a printed form. They attempted to express their intentions by filling in words and fractions in the form. Mutual mistake was plead, and the jury found that incorrect fractions were inserted by mistake. The trial court reformed the deed to express accurately the intentions of the parties, and that judgment was affirmed by the Court of Civil Appeals. So a correct result was reached. But the Court of Civil

2.—We do not have before us any question of the failure on the part of Langham, holder of the rights to execute leases, to exercise the utmost good faith in executing the lease for Hawkins as well as himself. See Schlittler v. Smith (1937), 128 Texas 628, 101 S.W. 2d 543, at 545: "We think that self-interest on the part of grantee [who there held the right to execute leases] may be trusted to protect grantor as to the amount of royalty reserved. Of course, there should be utmost fair dealing on the part of grantee in this regard."

Appeals said that the words "lease interest" in the form meant the possibility of reverter. Simmons then contends that since the grantees, Hawkins and Nivla, owned none of the possibility of the reverter (the "lease interest"), they could never own any portion of the 7/8ths "working interest" upon its reversion to the lessor regardless of the amount of royalty reserved in future leases; and that since the overriding royalty of 1/16th of 7/8ths must have come out of the 7/8ths which reverted upon the termination of the Sanders lease, Hawkins and Nivla could own no part of the overriding royalty.

That meaning of "lease interest" (that it meant the possibility of reverter) was disavowed by this Court in *Garrett v. Dils Company,* supra, where this Court said that lease interest "can have no other meaning than that the grantee shall have the right to lease * * * ." 157 Texas at 96, 299 S.W. 2d at 907.[3] Based upon that holding, we determined above that the grantor had retained the right to execute oil and gas leases on the interests conveyed to Hawkins. And based on that same portion of the opinion in *Garrett v. Dils Company,* we hold that Delta, as successor to Hawkins, is not precluded from participating in all of the royalty which might be reserved in the second, or any subsequent lease.

It may be observed that the wording of the "mineral deed" in question refers to "lease interest," at least by inference, as a "mineral privilege." It says that in the event of the termination of the existing lease, then "an undivided *none* of the lease interest and all future rental on said land * * * *and other mineral privileges* shall be owned by said Grantee." This supports the holding of *Garrett v. Dils Company* that "lease interest" refers to the privilege of executing oil and gas leases.

While the parties in the "mineral deed" did provide that the grantee, owning a 1/4th of the minerals, would receive a 1/4th of the royalty under the *existing* Sanders lease (½ of which, or 1/8th, went to Hawkins), there was no limitation as to the royalty to be received under future leases.

The portion of the judgment of the Court of Civil Appeals which holds that the grantor Langham reserved the right to

---

3.—"Uncertainty in the construction of such mineral deeds is illustrated by the erroneous reasoning applied in the case of Tipps v. Bodine * * * ." Comment 17 Texas Law Rev. at 348. Frank W. Elliott, Jr., in his article "The Fractional Mineral Deed 'Subject To' a Lease" in 36 Texas Law Rev. 620, under the heading "Sources of Confusion" points out the opinion in Tipps v. Bodine as being tortuous.

execute oil and gas leases on the interests conveyed in the "mineral deed," and that Delta did not acquire such privilege, is affirmed. The portion of that judgment which denies Delta a portion of the overriding royalty is reversed and judgment is here rendered that Delta recover a 1/8th part of all the royalty reserved in the second oil and gas lease, including 1/8th of the 1/16th of 7/8th overriding royalty.

Opinion delivered July 6, 1960.

Rehearing overruled October 5, 1960.