Archa F. ROBERTS, Appellant,

v.

**LONE STAR PRODUCING COMPANY,**
Appellee.

No. 3813.

Court of Civil Appeals of Texas.

Eastland.

June 21, 1963.

Rehearing Denied July 5, 1963.

**374**

Scurry, Scurry, Pace & Wood, John A. Pace, Dallas, for appellant.

Pitts, Gormley & Bilton, Thomas M. Gormley, Dallas, for appellee.

GRISSOM, Chief Justice.

Mrs. Archa F. Roberts, individually and as independent executrix of the estate of J. H. Roberts, deceased, sued Lone Star Producing Company. She sought construction of an assignment of oil and gas leases, lease amendments and division orders executed by her to Lone Star. The leases assigned were pooled, or unitized, by Lone Star with other lands and leases to form units 1, 7 and 8 of the Travis Peak formation involved here. Mrs. Roberts contends that she retained, in addition to an overriding royalty of $\frac{1}{4}$ of $\frac{7}{8}$ of the oil and gas produced above the Travis Peak formation, an oil payment of $75,000.00 from $\frac{1}{16}$th of $\frac{7}{8}$ths of the oil and gas produced from the Travis Peak formation; that Lone Star is producing gas from that formation but is paying her on said oil payment only $\frac{1}{16}$th of $\frac{7}{8}$ths of the production allocated to the units involved, while she is entitled to $\frac{1}{16}$th of $\frac{7}{8}$ths of the gas produced from the leases assigned by her to Lone Star.

The case was submitted to the court upon an agreed statement of facts. The court found that the lease amendments executed by Mrs. Roberts authorized Lone Star to pool the assigned leases with other lands and leases included in said units; that the declaration of unitization by Lone Star of Travis Peak gas units 1, 7 and 8 pooled and combined the interest of plaintiff with other leases and lands included therein; that execution by plaintiff of division orders applicable to units 1 and 8 ratified defendant's declaration of such units and subjected plaintiff's interest in those two units to the unitization provision; that acceptance by plaintiff of payments accruing to her interest in unit 1 upon a unitized basis from August 1, 1956, until about May 30th, 1962, constituted a ratification of unit 1 so that her interests therein were bound by the unitization provisions; that the $\frac{1}{16}$th of $\frac{7}{8}$ths of production reserved by plaintiff in the assignment, which interest Mrs. Roberts calls an oil and gas payment, is an overriding royalty within the meaning of the lease amendments which amendments authorized pooling and payment of overriding royalty based on the production allocated to said units because (1) such interest is, as a matter of law, an overriding royalty and (2) the parties defined that interest as an overriding royalty in the paragraph that created it. The court rendered judgment that plaintiff take nothing. Plaintiff has appealed.

It was agreed that on May 17, 1955, Mrs. Roberts owned, in the capacities in which she sued, an undivided $\frac{1}{2}$ interest in the leases assigned in so far as they include the Travis Peak formation; that she assigned said leases to Lone Star as to all formations down to the base of the Travis Peak formation; that the Bacon and Rodessa lime formations have been unitized by agreement and are not involved here. The only formation involved here is Travis Peak. The original leases did not permit the lessee to pool, or unitize, the land covered thereby with other lands and leases. After Lone Star acquired said leases it ob--

tained from all the "land owners" permission to pool the lands covered by said leases with other lands and leases, as it has done. Lone Star has formed pools, or units, numbered 1 through 10, for production of gas from the Travis Peak formation. At the time Mrs. Roberts assigned the leases to Lone Star, the Riddlesperger Well Number 1 was producing gas from the Travis Peak formation and plaintiff executed a division order effective May 1, 1955, which referred to Mrs. Robert's $75,000.00 interest as a ".0625 O.R.I." It provided that the stated division should continue "until the date on which the Lone Star unitization agreement covering this property is filed of record—".

The preamble to Article 2 of the assignment recited that Mrs. Roberts excepted and reserved "the following overriding royalty interests and oil and gas payments." Paragraph 1 of Article 2 then provided that Mrs. Roberts excepted and reserved an overriding royalty of 1/4th of 7/8ths of the oil and gas produced above the Travis Peak formation. (That is not involved here.) Paragraph 2 of Article 2 dealt with production from the Travis Peak formation and contained the provision reserving the $75,-000.00 payment in controversy. Said reservation is as follows:

"2. The equal one-sixteenth (1/16) part of all oil, gas—and all other minerals which may be produced and saved by Lone Star Producing Company—from all wells now or hereafter completed and producing oil or gas from the Travis Peak Formation in the lands described in Exhibit 'A'—until such time as Assignor shall have received from the proceeds of the sale of said one-sixteenth (1/16) part of such oil, gas—and other minerals over and above, and free and clear of any cost, charge, expense or deduction of any kind, including but not limited to gross production, pipe line, gathering and severance taxes, (but not including ad valorem or federal income taxes) the sum of Seventy-Five Thousand and no/100 ($75,000.00) Dollars, where-

upon this reservation shall terminate; and thereafter the working interest in the oil, gas and other minerals under the aforementioned leases shall be free and clear of the overriding royalty payment provided for in this section 2 of Article 11 hereof.—The overriding royalty production payment herein reserved shall be in addition to all other outstanding overriding royalty, production payments other than such overriding royalty, production or other payments that may have been assigned or reserved by said Assignor since May 1, 1951, the date J. H. Roberts acquired the aforementioned oil, gas and mineral leases. In the event said Assignor owns less than the interest so acquired by J. H. Roberts on May 1, 1951, the overriding royalty production payment hereinabove provided for in this Section 2 of this Article 11 shall be decreased proportionately."

In 1958 Mrs. Roberts executed two lease amendments. The first recited that Mrs. Roberts owned "a mineral and/or royalty and/or overriding royalty interest" and that Lone Star owned the leasehold interest in certain leases and that they desired to amend said leases to provide for pooling. It gave Lone Star authority to pool the land covered by said leases, or any part thereof, with any other land or leases it deemed advisable. It provided that Lone Star should record an instrument describing the pooled acreage. It then provided that "The entire acreage so pooled into a unit shall be treated for all purposes, except the payment of royalties, as if it were included in this lease, and drilling or reworking operations thereon or production of oil or gas therefrom, or the completion thereon of a well as a shut-in gas well, shall be considered for all purposes, except the payment of royalties, as if such operations were on or such production were from or such completion were on the land covered by this lease, whether or not the well or wells be located on the premises covered by this lease. In lieu of the royalties elsewhere herein speci-

fied Lessor shall receive from a unit so formed, only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein bears to the total acreage so pooled in the particular unit involved." It then provided that Lone Star might add to a unit other interests acquired in the area by filing notice with the County Clerk "but no such interest shall share in the royalties *under any such existing unit* prior to the first day of the calendar month next succeeding the date when such interest becomes bound under said unit. In the absence of production Lessee may terminate any unitized area by *filing of record notice of* termination. The foregoing provisions as to royalties shall also apply to overriding royalties."

The second lease amendment, likewise, authorized unitization by the lessee and provided that royalties, including overriding royalties, should be paid upon the basis of the production allocated to a unit, instead of upon the amount actually produced from the assigned leases.

In July, 1955, Mrs. Roberts executed a division order applicable to unit 1. It referred to her $75,000.00 payment as an .0625 overriding royalty interest and provided that such interest should continue until $75,000.00 was received from "this interest and interests in other leases" and that the division provided for should continue "until the date the Lone Star unitization agreement covering this property is filed of record—." Mrs. Roberts, knowingly, for about six years, accepted payments for gas produced from unit 1 based upon the production allocated to that unit, instead of actual production from the assigned leases. She executed a like division order applicable to unit 8, however, no payment was received thereon prior to this suit. Mrs. Roberts did not execute such a division order for unit 7.

Mrs. Roberts says that neither the lease amendments, the division orders, nor a combination of the things mentioned, authorized Lone Star to make payments on the $75,-

000.00 based on allocated production, and that the court erred in so holding. The lease amendments were executed for the expressed purpose of permitting the lessee to pool, or unitize, the leases assigned by Mrs. Roberts with other lands and leases. They provided that when this had been done the acreage in a unit should be treated for all purposes, except payment of royalties, as if it were included in the amended leases. They expressly provided a change in the basis for payment of royalties from a certain portion of actual production to the same portion of the production allocated to a unit. They stipulated that said provision for payment of royalties should apply to overriding royalties.

 The provision for payment of $75,000.00 out of a certain part of the oil and gas produced is an overriding royalty within the meaning of the lease amendments. Westgate-Greenland Oil Co. v. Mack, Tex.Civ.App., 164 S.W.2d 31, 32 (RWM); McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 344; State National Bank v. Morgan, 135 Tex. 509, 143 S.W.2d 757; State v. Quintana Petroleum Co., 134 Tex. 179, 133 S.W.2d 112, 115, 128 A.L.R. 843. In the paragraph of the assignment creating and reserving that interest it is described as "an overriding royalty interest" and referred to as an "overriding royalty production payment." It was not therein called an oil and gas or production payment. See Murphy v. Jamison, Tex.Civ. App., 117 S.W.2d 127, 131, (WR). However, an oil and gas payment, or production payment is a royalty and an overriding royalty. See Delta Drilling Company v. Simmons, 161 Tex. 122, 338 S.W.2d 143, 147. Both overriding royalties and oil and gas payments are carved out of the working interest. They are overriding. They are both interests in land. Standard Oil Company of Texas v. Marshall, 5 Cir., 265 F.2d 46, 53. The only difference is that an oil and gas payment terminates when the amount provided for has been paid, while an overriding royalty continues until termination of the lease. We do not think that distinction is material here. 20 Tex.Law Re-

view 269. When the parties were creating and reserving that interest they called it an overriding royalty. When they changed the manner of its payment they called it an overriding royalty. See Griffith v. Taylor, 156 Tex. 1, 291 S.W.2d 673, 675. It is an overriding royalty. See Kaiser v. Love, (Tex.Sup.Ct.), 358 S.W.2d 586, 588. By virtue of the terms of the lease amendments the $75,000.00 is payable out of the stated portion of the gas allocated to the units, instead of out of the same portion of actual production from the assigned leases. Appellant granted appellee the right to unitize the land and leases with other lands and leases. The $75,000.00 payment is covered by the provisions in the amendments that overriding royalties are payable out of the gas allocated to a unit. Furthermore, we think that in the absence of a contrary agreement, such is the legal effect of a unitized lease, to wit, the sharing of production, or the proceeds therefrom, in proportion to the acreage contributed to a unit, where no other basis is specified. Southland Royalty Co. v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914; Duffey v. Callaway, Tex.Civ.App., 309 S.W.2d 853, (WR); Eighth Annual Institute on Oil & Gas Law 260–290; Ward v. Gohlke, Tex. Civ.App., 279 S.W.2d 422, 427, (WR); Standard Oil Co. v. Donald, Tex.Civ.App., 321 S.W.2d 602 (WR).

The division order applicable to unit 1 provided that

"It is agreed that settlement for proceeds on the interests set out herein shall be determined on the basis of the proportion the total acreage in the tract described above bears to the total acreage included in the Travis Peak Unit comprising a total of 691.73 acres described and designated in Declaration of Travis Peak Unit No. 1—."

The division order for unit 8 contained the following:

"The undersigned hereby adopts, ratifies and confirms the aforementioned designation of Gas Pooling Unit, and the oil and gas leases including any and all amendments thereof more specifically described therein; such ratification to be valid and effective irrespective of the cancellation of this instrument."

As to units 1 and 8, appellant, by execution of said division orders, ratified unitization of the leases assigned with other lands and leases and appellee's method of paying the $75,000.00. Loeffler v. King, 149 Tex. 626, 236 S.W.2d 772, 774; Leopard v. Stanolind Oil and Gas Company, Tex.Civ.App., 220 S.W.2d 259, 264, (Ref. N.R.E.); Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619, 622.

Appellant's points are overruled. The judgment is affirmed.