# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 31, 2020

Lyle W. Cayce
Clerk

No. 19-50860

Five Star Royalty Partners, Limited,

*Plaintiff—Appellee*,

*versus*

Jack Mauldin, Jr., *Individually and in his capacity
as Trustee of the Charles W. Welch Irrevocable Trust*;
Timothy L. Welch, *Individually and as
Trustee of the Timothy L. Welch and Vicky L. Welch Revocable Living Trust*;
CK Bird Minerals, L.P.;
Kathryn B. Bird, *as Trustee of the Kathryn B. Bird Revocable Trust*,

*Defendants—Appellants*.

Appeals from the United States District Court
for the Western District of Texas
USDC No. 6:16-CV-465

Before Smith, Willett, and Duncan, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Defendants appeal a summary judgment favoring Five Star Royalty Partners, Limited ("Five Star"), which had sought to quiet title over certain oil-and-gas interests. The district court declared that Five Star "own[s] an undivided three-eighths ($3/8$) mineral interest pursuant to [a] May 5, 1927 deed." We affirm, though we clarify that said mineral interest consists solely

No. 19-50860

of the right to receive a proportionate share of royalties and does not include any executive right or right to develop the land.

## I.

This case concerns the interpretation of a May 5, 1927, deed (the "Deed") purporting to convey a "royalty interest" and an "equivalent reversionary interest in and to all oil, gas, casinghead gas, and other minerals, in and under" certain sections of land. That Deed reads in relevant part as follows:

> [Grantor conveys to grantee] a *royalty interest of three-eighths* ($^3/_8$) *of all . . . minerals*, hereafter produced and saved from, together with an *equivalent reversionary interest in and to all . . . minerals*, in and under the [relevant lands] . . . .

> [That] land being now under an oil and gas lease . . . . It is understood and agreed that this sale is made subject to the terms and conditions of said lease and *the royalty interest hereby conveyed is a three-eighths* ($^3/_8$) *part of the royalty provided by said lease* to be paid, but the royalty interest hereby conveyed *shall be a covenant running with said land* in perpetuity and *shall be provided for in any future lease or sale* of the . . . minerals in, on and under the [relevant] land.

> It is understood that the *three-eighths of one-eighth* interest herein conveyed is a royalty interest only, and the grantee by reason of the possible reversionary interest in the . . . minerals in and under said land shall have no interest in any rentals, bonuses or other revenues or moneys other than royalties received or derived from the lease or sale of said land, and neither the grantee nor its successors or assigns shall have any control over the lease or sale of said lands for minerals or other purposes, and for the purpose of leasing, selling or making other contracts for the development and production of the minerals in said lands, the original grantors are expressly made the agents of the grantee, and it shall not be necessary to consult the grantee in any way with respect thereto; but in case . . .

minerals shall at any time hereafter be produced from said lands, then and in that event *the grantee shall receive a three-eighths of one-eighth of the same so produced and saved, as royalty*, which shall be delivered to the grantee, its successors, and assigns. [Emphases added.]

Five Star, asserting itself as the grantee's successor-in-interest, sought a declaration that it owns a "floating" royalty entitling it to a $3/8$ share of any leased royalty. The defendants each counterclaimed that Five Star owns a fixed royalty interest consisting of a $3/8$ of $1/8$ (*i.e.*, $3/64$) share of gross production. The district court granted Five Star's motion for summary judgment and denied defendants' equivalent motions.

Seeking to establish chain of title to the interest conveyed in the Deed, Five Star had submitted various property records. The latest conveyance in that chain described the interest obtained by Five Star as "ROYALTY ONLY." After summary judgment, Five Star moved to supplement the record with "newly-available evidence," including a recent quitclaim executed by the successor to the entity that had transferred the "ROYALTY ONLY" interest to Five Star. The district court granted that motion while simultaneously denying defendants' motion to modify the judgment. Defendants appeal.

## II.

"This court reviews summary judgment de novo, applying the same legal standards as the district court. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 199 (5th Cir. 2019) (cleaned up). "We can affirm the . . . summary judgment on any ground supported by the record." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).

"When, as in this case, subject matter jurisdiction is based on diversity, federal courts apply the substantive law of the forum state. For guidance, we turn first to [Texas's] highest court and otherwise look to its intermediate courts to determine how the highest court should likely rule." *Ryder*, 945 F.3d at 199 (cleaned up).

### A.

A suit to quiet title "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of [a] better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. App.—Waco 1980, writ ref'd n.r.e.) (quoting *Thomson v. Locke*, 1 S.W. 112, 115 (Tex. 1886)). "[T]he plaintiff must prove, as a matter of law, right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Five Star submitted a chain of title purporting to demonstrate an ownership interest in the land. The legitimacy or continuity of that chain is undisputed, as is the existence of defendants' competing claim. We agree with the district court's finding such uncontested proof enough, "as a matter of law, . . . [to establish] ownership in [Five Star] with sufficient certainty to enable the court to see that [Five Star] has a right of ownership" before determining whether defendants' "claim is a cloud on the title that equity will remove." *Id.*

The defendants' contrary suggestion—that Five Star has not established ownership because one conveyance in its chain of title purports to transfer a "ROYALTY ONLY"—is unpersuasive. Even accepting that Five Star holds solely a "royalty," that would affect the *nature* of Five Star's ownership interest and not its existence. Five Star's interest, shown throughout

the chain of title, undisputedly includes some kind of "royalty" as first conveyed in 1927. Defining that "royalty" is the core question and is separate from the issue of ownership.[1]

## B.

"The construction of an unambiguous[2] deed is a question of law for the court. The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the 'four corners' rule." *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991) (citation omitted). That rule "favor[s] a holistic and harmonizing approach and reject[s] mechanical rules of construction, such as giving priority to certain types of clauses over others or requiring the use of magic words." *Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016). Indeed, "[n]o single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006).

"In this case, questions of [contractual] intent arise due, in part, to the use of double fractions," to "the prevalence of $\frac{1}{8}$ as the standard royalty at the time" of the Deed's execution, and to the subtle, though important, distinction between a "royalty interest" as a constituent element of a mineral interest and a "royalty interest" consisting of a fixed factor of gross production. *Hysaw*, 483 S.W.3d at 8. We consider, first, the kind of royalty the Deed conveyed, before turning to the amount thereof.

---

[1] To be sure, the "ROYALTY ONLY" language might have been relevant if we agreed with the district court's finding that the 1927 Deed conveyed to its grantee not only royalty rights but also executive and development rights. *See infra* section II.B.2.

[2] No party contends that the Deed is ambiguous.

No. 19-50860

1.

"The word 'royalty' has a well understood meaning in the oil and gas industry." *Watkins v. Slaughter*, 189 S.W.2d 699, 700 (Tex. 1945). Nevertheless, this case requires distinguishing between two kinds of "royalty" interests: (1) a "mineral interest" that includes a right to receive a proportionate share of reserved royalties and (2) a free "royalty interest" granting a right to a fixed fraction of gross production.

"A mineral estate consists of five interests: 1) the right to develop, 2) the right to lease, 3) the right to receive bonus payments, 4) the right to receive delay rentals, and 5) the right to receive royalty payments." *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995). It is possible to convey (by express intention) solely the royalty interest while reserving or excepting the others; the grantee would nevertheless hold a "mineral interest"—"a mineral interest stripped of appurtenant rights other than the right to receive royalties." *Id.* at 798. Such an interest is "subject to being leased," entitling the interest-holder to his portion "of the royalty reserved in the instrument leasing the mineral interests." *Delta Drilling Co. v. Simmons*, 338 S.W.2d 143, 146 (Tex. 1960).[3] "In other words, when a deed conveys a royalty interest by the mechanism of granting a fractional mineral estate followed by reservations, what is conveyed is a *fraction of* royalty, not a fixed fraction of total production royalty." *French*, 896 S.W.2d at 798.

A "royalty interest" can also indicate a non-mineral estate interest, sometimes referred to as a "non-participatory royalty interest" or an "overriding royalty,"[4] which in any case consists of "an expense-free obligation

---

[3] Absent an operating lease, the "royalty interest" due to the interest-holder would be his share of the mineral estate, minus production costs. *See Cox v. Davison*, 397 S.W.2d 200, 201 (Tex. 1965).

[4] *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 742 n.2 (Tex. 2020). Precise

No. 19-50860

(except as to taxes), payable as a specified share of the gross production."
*Delta*, 338 S.W.2d at 147.[5] Such an interest, the defendants contend, was
conveyed in the Deed. That contention, if true, would support an inference
that Five Star, as the grantee's successor-in-interest, would be owed not a
portion of royalties reserved to the mineral estate owner but a fixed royalty
of gross production.

The district court, however, correctly recognized that the Deed con-
veyed an interest in the mineral estate. First, the Deed's "royalty interest"
(as distinguished from its "equivalent reversionary interest") itself is a por-
tion of royalties and not a fixed factor of gross production. The granting
clause conveys a "royalty interest of three-eighths ($^3/_8$) of all . . . minerals";
in isolation, that might suggest a $^3/_8$ fixed royalty. *See Watkins*, 189 S.W.2d
at 700–01. The Deed's second paragraph, however, refers to the same inter-
est as "a three-eighths ($^3/_8$) *part of the royalty provided* by [the then-operative]
lease," and in the third paragraph we encounter the "royalty interest" again
phrased as a "three-eighths of one-eighth interest." Moreover, the Deed
neglects to absolve the grantee of production costs.[6] Such language suggests
that the "royalty interest" is not a fixed royalty but instead is a right to
receive royalties proportionate to a held mineral interest.[7]

---

distinctions, if any, among various subgroups of non-mineral estate royalty interests—*e.g.*,
"free" or "pure" or "overriding" royalty interests—are not relevant to this case, particu-
larly given that we find the Deed not to have conveyed any such interest.

[5] *See also KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 75 (Tex. 2015); 8 Williams
& Meyers Oil & Gas Law 921 (2019 ed.) (noting that "royalty" can be "(1) [t]he
landowner's share of production, free of expenses of production [or] (2) [a] share of pro-
duction, free of expenses of production[.]").

[6] *Cf. id.* at 186 (holding "that a [fixed] royalty interest was reserved" in key part
because the deed explicitly stated that "the interest retained [would be] free of the costs of
drilling and production").

[7] *See Temple-Inland Forest Prods. Corp. v. Henderson Family P'ship, Ltd.*, 958 S.W.

The Deed's third paragraph only strengthens that conclusion. Its "Reservations Clause"[8] states that "the possible [equivalent] reversionary interest" would not transfer any right to lease or develop[9] the land, or to receive rentals or bonus payments "other than *royalties received or derived from the lease or sale* of [the] land." Those "reservation[s] would be redundant and would serve no purpose whatsoever if the interests in minerals being conveyed [were] a [fixed, pure] royalty interest, that is, [a set fraction] of all production." *French*, 896 S.W.2d at 798.

The defendants would have the foregoing analysis not apply because, in their view, the so-called "Reservations Clause" is a list of exceptions and not reservations.[10] But even if we refer to the relevant section as the "Exceptions Clause," we cannot conceive of a single reason—and defendants have not attempted to provide any—why the Texas Supreme Court's analysis of "when a deed conveys a royalty interest by the mechanism of granting a fractional mineral estate followed by *reservations*" might apply any differently should said "mechanism . . . [be] followed by" *exceptions*. *French*, 896 S.W.2d at 798 (emphasis added).[11] It is of no immediate concern who *is* to be enjoying

2d 183, 185 (Tex. 1997) ("The owner of 50 royalty acres out of a 32,808.5 acre tract is entitled to receive $^{50}/_{32,808.5}$ *of* royalty, not a $^{50}/_{32,808.5}$ fixed royalty.").

[8] For continuity's sake, we, like the district court, refer to the two broad sections within the Deed's third paragraph as the "Reservations Clause" (ending at "but in case") and the "Future Production Clause."

[9] *See infra* note 14.

[10] *See Pich v. Lankford*, 302 S.W.2d 645, 650 (Tex. 1957) ("The primary distinction between a reservation and exception is that a reservation must always be in favor of and for the benefit of the grantor, whereas, an exception is a mere exclusion from the grant, in favor of the grantor only to the extent that such interest as is excepted may then be vested in the grantor and not outstanding in another.") (emphasis omitted).

[11] *See also Pich*, 302 S.W.2d at 650 (citation omitted) (stating that, although "[t]he words 'exception' and 'reservation' are not strictly synonymous, [ ] they are often used interchangeably").

the interests excluded; whether by "reservations" or by "exceptions," it is enough that the Deed expressly states that the specified interests *shall not be the grantee's*.

The Deed conveyed two interests that were "equivalent[ly]" the same right to receive a share of royalties commensurate with a mineral interest. As the lands were under an operating lease at the time of the conveyance, the grantee would gain a fraction of the grantor's right to receive royalties reserved in that lease. That interest would carry a "possibility of reverter," under which "[t]he royalty rights [ ] may revert [to the grantor], as part of the total mineral estate that may revert" upon termination of the lease. *Luckel*, 819 S.W.2d at 464. But the Deed foreclosed that possibility by specifying that the interest would "be a covenant running with [the] land in perpetuity and [would] be provided for in any future lease or sale"; for his "possible reversionary interest," the grantee's right to receive a fractional royalty would revert to the grantee himself. Given that the relevant operating lease did terminate, the "royalty interest" reverted to the grantee, who now owns a single "interest in the nature of a royalty—a mineral interest stripped of appurtenant rights other than the right to receive royalties." *French*, 896 S.W.2d at 798.

## 2.

Despite observing the dichotomy between the Reservations Clause (and its withholding of rights) and the Future Production Clause (and its granting of rights), the district court neglected to consider such when dispensing with the executive right. The court found that "the Deed, by appointing the original grantor as the *agent* of the grantee for purposes of exercising the executive right, acknowledges that that right is not reserved to the grantor but remains instead as a constituent attribute of the grantee's mineral interest." Thus, the court accepted Five Star's proffered argument that "the

[D]eed does not deprive the Grantee of the executive right and right to develop associated with the reversionary mineral interest it conveyed. It simply provides that the Grantor will exercise those rights through an agent specified in the [D]eed."

We disagree. First, the Deed's naming the grantor as "the agent[] of the grantee" when "leasing, selling, or making other contracts for [ ] development and production" is squarely within the Reservations Clause, which, as the district court acknowledged, concerns rights *not* conveyed. That alone suggests the "agent" language would not transfer the executive right but, instead, would qualify how the grantor may exercise the right otherwise withheld to himself.

Bolstering that conclusion is the internal inconsistency that would arise from the district court's reading. A principal-agent relationship, today as in 1927, requires the former to enjoy at least *some* control over the latter.[12] Although the Deed does refer to the grantor as the grantee's "agent[]" in exercising the executive right, in the same breath—bookending the "agent" language—it declares that the grantee would lack "*any control* over the lease or sale of [the] lands" and that it would "not be necessary [for the grantor] to consult the grantee *in any way* with respect thereto." Not only is it unlikely that a conveyance of a mineral interest would be found within the Reser-

---

[12] *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 392 (1982) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf *and subject to his control*, and consent by the other so to act.") (emphasis added) (quoting Restatement (Second) of Agency § 1 (Am. Law Inst. 1958)); *Hunter v. Adoue & Lobit*, 86 S.W. 622, 624 (Tex. 1905) ("The agent's right is, of course, subordinate to and liable to the control of the principal to the extent of his interest."); *see also* Warren A. Seavey, *The Rationale of Agency*, 29 Yale L.J. 859, 863 (1920) ("The agent's duty of obedience flows directly from the control which the cases recognize to be at all times in the principal.").

vations Clause; under its own terms, the grantor, *by definition*, could not truly be the grantee's "agent."

That the prospective royalty owner should insist on some sort of fiduciary standard governing the executive is explained by the state of the law at the time. As late as 1948—a full twenty years after the Deed's execution—Texas law had "not yet developed to the point where a clear concept of the exact nature of the relation and duties [between the royalty owner and the exclusive-lessor could] be ascertained," so that a "royalty owner [would] not be fully protected if he must rely entirely upon the ordinary principles of contract law." Lee Jones, Jr., *Non-Participating Royalty*, 26 TEX. L. REV. 569, 573–74 (1948). Indeed, "[a] royalty owner has no power to lease or use the surface, or to interfere with the land owner in any way. It might be, or it might not be true that the courts [as of 1946] would raise an implied obligation in his favor, requiring the land owner to lease the land under certain circumstances . . . ." *Moore v. City of Beaumont*, 195 S.W.2d 968, 980 (Tex. Civ. App.—Beaumont 1946), *aff'd*, 202 S.W.2d 448 (Tex. 1947). For the Deed's grantee, however, there would be no potential need to determine the existence of any such "implied obligation" because that obligation was made express by the "agent" proviso.[13]

That proviso is thus a limitation on the Deed's reserving the executive right with the grantor: The grantor would retain the executive right (and the right to develop[14]), but "a fiduciary standard of conduct will be required on

---

[13] *Cf. Hager v. Stakes*, 294 S.W. 835, 837 (Tex. 1927) (noting a conveyance in which it was expressly agreed that "no obligation is imposed . . . to drill or operate for oil . . . but that [the royalty owner] shall have [his] part of such petroleum only if and when produced").

[14] On its face, "the deed was silent as to the conveyance of the right to develop," but "the right to develop is a correlative right and passes with the executive rights [*i.e.*, the right to enter leases for sale or development of the land]." *French*, 896 S.W.2d at 797 n.1.

the theory that [something akin to] the relation of principal and agent or trustee and *cestui que* trust exists."[15] The grantee, though receiving solely the right to receive proportionate royalties, may be assured that the estate would be developed, leased, and utilized in good faith toward his interest.[16] That interest, however, remains solely a right to receive royalties as a partial mineral interest-holder.

## C.

Having determined the nature of Five Star's interest, we consider its quantum. The source of contention is that the Deed's paragraphs appear to contradict one another. Its first paragraph purports to convey "a royalty interest of *three-eighths* ($3/8$) . . . together with an *equivalent* reversionary interest." Its second paragraph, however, states that "the royalty interest hereby conveyed is a three-eighths ($3/8$) *part of the royalty provided by the* [operative] *lease*" and that the same "interest . . . shall be provided for in any future lease or sale." Further compounding the discrepancy, the third paragraph refers to that interest as a "*three-eighths of one-eighth* interest," and it declares that "in case . . . minerals shall at *any time* hereafter be produced

---

Therefore, the Deed's expressly disclaiming to convey "any control over the lease or sale of [the] lands for minerals or other purposes," effectively reserved "the right to develop . . . in the grantor." *Id.*

[15] Jones, *supra*, at 573. In more recent years, Texas courts have found that "a fiduciary relationship [does] exist[] between an owner of the executive rights and [a] non-participating royalty owner[]." *KCM*, 457 S.W.3d at 80. That duty is distinct from "a more paradigmatic fiduciary relationship, like principal and agent," as the executive need not "grant priority to the non-executive's interest," though he must nevertheless "acquire every benefit for the non-executive that [he] would acquire for himself." *Id.* at 81 (quotation marks omitted).

[16] Given that the 1927 Deed granted solely a "right to receive royalties," *French*, 896 S.W.2d at 798, it is of no consequence that a subsequent conveyance in Five Star's chain of title purported to transfer a "ROYALTY ONLY." We thus decline to consider defendants' argument relating to Five Star's submission of the post-judgment quitclaim.

from [the relevant] lands, then . . . the grantee shall receive *a three-eighths of one-eighth* of the same so produced and saved, as royalty."

The defendants suggest that the double fraction be read literally to convey, effectively, a $3/64$ interest in gross production. Five Star submits that the fraction "one-eighth" in context is but a proxy for whatever be provided in a lease so that "three-eighths of one-eighth" is synonymous with a right to receive royalty proportionate to a $3/8$ mineral interest.

Texas is no stranger to such controversies. In one case, the deed— executed in 1921—began by granting "an undivided *one sixty-fourth* interest in and to all . . . minerals in and under, and that may be produced from the . . . land." *Garrett v. Dils Co.*, 299 S.W.2d 904, 905 (Tex. 1957) (emphasis added). And it ended by noting, again, that the grantee would "own[] *one-eighth of one-eighth* of all . . . minerals in and under said lands." *Id.* (emphasis added). In an intervening paragraph, however, the deed stated that the sale would "cover[] and include[] *one-eighth of all* . . . royalty due and to be paid under the terms of [the existing] lease," which itself "provided for a one-eighth royalty." *Id.* (emphasis added).

The Texas Supreme Court held that the deed, notwithstanding its language of "one sixty-fourth" and "one-eighth of one-eighth," granted a right to receive $1/8$ of royalties reserved under future leases:

> As pointed out above, there was granted one sixty-fourth of the minerals which the parties construed to mean one-eighth of the one-eighth royalty under the then existing lease. The provision for ownership of the minerals under future leases is that the grantee shall own 'one-eighth of one-eighth' of the minerals. Had that fraction been expressed as one sixty-fourth, it should be given the same meaning as in the granting clause which the parties understood and agreed to be a one sixty-fourth royalty or one-eighth of the one-eighth royalty. Instead of employing the fraction one sixty-fourth in defining the ownership under a

subsequent lease, the provision is for one-eighth of one-eighth. Clearly, that does not denote a less interest than a one sixty-fourth, but on the contrary it emphasizes the fact that the intention was to convey one-eighth of the royalty under future leases the same as under the original lease. The court takes judicial knowledge of the fact that the usual royalty provided in mineral leases is one-eighth. The parties doubtless assumed that the royalty under future leases would be one-eighth, as it was under the lease in existence when the deed was executed.

*Id.* at 906–07; *see also Hysaw*, 483 S.W.3d at 10 n.11.

The correct resolution of this case becomes apparent. The Deed purports to grant a "royalty interest of three-eighths" in the minerals, combined with "an equivalent reversionary interest." The grantee would thus be entitled to "three-eighths ($^3/_8$) part of the royalty provided by [the then-operative] lease"—$^3/_8$ of $^1/_8$. But should that lease terminate (which it did), the grantee's interest by reverter would "be provided for in any future lease or sale," *i.e.*, he would be owed "a three-eighths ($^3/_8$) part of the royalty . . . provided for in any future lease or sale." That interest, though an interest in the mineral estate, would be of the estate's "royalty interest only"; all other interests[17] would remain with the grantor, who may exercise them as he wishes, provided he does not violate his fiduciary duty (akin to, though not precisely that of an "agent[]") toward the grantee's interest. "Instead of employing the fraction [three] sixty-fourth[s] in defining the ownership under a subsequent lease, the provision [in the third paragraph] is for [three]-eighth[s] of one-eighth. Clearly, that does not denote a less interest than [three] sixty-fourth[s], but on the contrary it emphasizes the fact that the

---

[17] That is, "1) the right to develop, 2) the right to lease, 3) the right to receive bonus payments, [and] 4) the right to receive delay rentals." *French*, 896 S.W.2d at 797.

intention was to convey [three]-eighth[s] of the royalty under future leases the same as under the original lease." *Garrett*, 299 S.W.2d at 907.

It is true that, taken alone, "the double-fraction royalty . . . [might be read] as a mathematical expression describing a [single] fractional royalty; under such a reading, any excess royalty would default to the fee owner." *Hysaw*, 483 S.W.3d at 15. But "our objective is to effectuate the parties' intent as expressed within the four corners of the conveying instrument," and that is accomplished through "careful and detailed examination of the document in its entirety, rather than by application of mechanical rules of construction that offer certainty at the expense of effectuating intent." *Id.* at 16. Such an inquiry reveals that the parties intended to convey a $^3/_8$ interest in the mineral estate, reduced to the right solely to receive royalties proportionate to any applicable lease as represented by the metonym of "one-eighth."

The judgment is AFFIRMED, but subject to the clarification that Five Star's $^3/_8$ mineral interest includes solely a right to receive proportionate royalties.